STATE OF CONNECTICUT *v.* GARY MARTINO
(AC 19176)

Landau, Pellegrino and Callahan, Js.

Argued September 18—officially released December 12, 2000

*Norman A. Pattis*, for the appellant (defendant).

*Margaret Gaffney Radionovas*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James R. Turcotte*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

CALLAHAN, J. The defendant, Gary Martino, appeals from the judgments of conviction, rendered after a jury trial, of multiple counts of failure to appear in the sec-

ond degree in violation of General Statutes § 53a-173, criminal violation of a protective order in violation of General Statutes § 53a-110b, harassment in the second degree in violation of General Statutes § 53a-183 (a) (3), disorderly conduct in violation of General Statutes § 53a-182 (a) (1), tampering with a witness in violation of General Statutes § 53a-151 and stalking in the first degree in violation of General Statutes § 53a-181c (c) (2).

On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction on the failure to appear charges, and (2) he was subjected to double jeopardy in violation of the fifth amendment to the United States constitution by being charged with and convicted of both criminal violation of a protective order and harassment in the second degree. We affirm the judgments of the trial court.

The following facts are relevant to this appeal. On March 5, 1996, the defendant and the victim, who were cohabiting, had an argument. The altercation continued throughout the night of March 5, 1996, and into the morning of March 6, 1996, at which time the defendant physically and verbally abused the victim by slapping her, throwing furniture and calling her disparaging names. In response, the victim called the police. Although the victim feared the defendant and did not want to press charges, the police arrested the defendant pursuant to the state's family violence law, General Statutes § 46b-38b.[1] He was charged with disorderly conduct and interfering with a police officer, and was released on bail. Later that same day, the Superior Court

[1] General Statutes § 46b-38b (a) provides in relevant part: "Whenever a peace officer determines upon speedy information that a family violence crime, as defined in subdivision (3) of section 46b-38a, has been committed within his jurisdiction, he shall arrest the person or persons suspected of its commission and charge such person or persons with the appropriate crime. . . ."

issued a family violence protective order that prohibited the defendant from contacting the victim in any manner. The defendant received a copy of the protective order, and a police officer reviewed the terms of the order with him.

Almost immediately, however, the defendant began calling the victim at work and leaving malicious messages with her coworkers. On April 8, 1996, the defendant appeared at the victim's place of employment and demanded to speak with her. After the victim refused, the defendant eventually left, only to call the victim at home and leave belligerent messages on her telephone answering machine.

Over the next few days, the defendant left numerous hostile messages for the victim, calling her degrading names and indicating that he was following her. The victim complained and gave her answering machine tapes to the police. On April 11, 1996, the defendant went to the victim's home and demanded to speak with her. When the victim refused to allow the defendant to enter her home, he left and proceeded to call the victim constantly on the telephone throughout the day.

From March, 1996, to June, 1996, the defendant continued to leave messages on the victim's home answering machine, stating that he knew what she was doing and with whom she was going out. In May, 1996, the defendant again began to call and leave messages for the victim while she was at work. On May 9, 1996, the victim again contacted the police to report the defendant's harassing telephone calls.

On several occasions, the victim noticed that the defendant was following her. The defendant also left notes for the victim on the doorstep of her home and made threatening telephone calls to her family. While the victim was at work on June 13, 1996, the defendant entered her place of employment and, in front of cus-

tomers and coworkers, verbally abused her. The defendant refused to leave and insulted the victim's supervisor after the supervisor demanded that the defendant exit the building. The victim reported that incident to the police.

The defendant was arrested on April 24, 1996, and charged with stalking in the third degree, harassment in the second degree and several violations of the protective order. On May 9, 1996, the defendant was arrested and charged with harassment and criminal violation of the protective order. After each arrest, the defendant was released on bail or on a promise to appear in court.

A hearing regarding the defendant's arrests for the various counts of disorderly conduct, harassment and violations of the protective order was scheduled for June 26, 1996, but the hearing on the numerous files was continued until the next day, June 27, 1996. The defendant's attorney was in court on June 26, 1996. That day, the defendant continuously telephoned the victim at work and at home, calling her at work between thirty and forty times. The defendant went to the victim's workplace, told one of her coworkers that he would not spend one minute in jail and threatened that the victim would "not get away with this." The defendant also closed his savings account on June 26, 1996.

In his numerous messages on the victim's home telephone answering machine on June 26, 1996, the defendant was verbally abusive to her and stated, "You think I'm going to show up in court?" and, "You think I'm going to go to jail for you?" and, "This state will never see me again." The defendant also pleaded for the victim to cease involving the police in their personal affairs. The victim reported all of the defendant's telephone calls to the police and again gave them the recorded

messages. The telephone calls to the victim's home continued until the morning of June 27, 1996.

On June 27, 1996, the defendant failed to appear at the scheduled hearing on his numerous charges, and the court ordered his rearrest. The defendant was arrested on June 28, 1996, on a charge of failure to appear and was rearrested on July 1, 1996, on charges of tampering with a witness, harassment in the second degree and violation of a protective order.

## I

The defendant first contends that the evidence the state presented was insufficient to support his conviction on the failure to appear charges because the state failed to demonstrate that he had notice of the court date of June 27, 1996. We disagree.

"When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a two-fold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . . We then determine whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 234 Conn. 324, 331, 662 A.2d 1199 (1995). In the present case, we affirm the judgments of conviction because the jury reasonably could have concluded beyond a reasonable doubt that the defendant had notice of the June 27, 1996 hearing and wilfully failed to appear.

Pursuant to § 53a-173,[2] to support a conviction for failure to appear, "the state must prove beyond a rea-

[2] General Statutes § 53a-173 (a) provides: "A person is guilty of failure to appear in the second degree when (1) while charged with the commission of a misdemeanor or a motor vehicle violation for which a sentence to a term of imprisonment may be imposed and while out on bail or released

sonable doubt either that the defendant received and deliberately ignored a notice to appear or that he intentionally embarked on a course of conduct designed to prevent him from receiving such notice." (Internal quotation marks omitted.) *State* v. *Laws*, 39 Conn. App. 816, 819, 668 A.2d 392 (1995), cert. denied, 236 Conn. 914, 673 A.2d 1143 (1996), citing *State* v. *Candito*, 4 Conn. App. 154, 157, 493 A.2d 250 (1985). Here, the jury reasonably could have found proof of the notice to the defendant of the rescheduled hearing date and his wilful failure to appear from evidence of his actions, his increased reprehensible behavior toward the victim and statements he made between June 25, 1996, and June 27, 1996.

In the two days before the hearing and on the date of the hearing, namely, from June 25 through June 27, 1996, the defendant's harassment escalated, and he engaged in more offensive and persistent conduct than he had previously. From June 25 until June 27, 1996, the defendant constantly called the victim at home and at work, followed her and appeared at her workplace. On June 26, 1996, the original date of the hearing, the defendant stated to one of the victim's coworkers that he would not spend one minute in jail and that the victim "would not get away with this." The defendant also left numerous messages on the victim's telephone answering machine throughout the day and night of June 26, 1996, exclaiming, "You think I'm going to show up in court?" and, "You think I'm going to go to jail for you?" and, "This state will never see me again." Further, the defendant left messages on the victim's telephone answering machine urging her not to "crucify" him and

---

under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear, or (2) while on probation for conviction of a misdemeanor or motor vehicle violation, he wilfully fails to appear when legally called for a violation of probation hearing."

not to involve the police. Additionally, the defendant closed his savings account on June 26, 1996.

On the basis of the totality of the evidence presented, the jury reasonably could have concluded beyond a reasonable doubt that the defendant received notice that the hearing was scheduled for June 27, 1996, and that rather than face the barrage of charges against him, he intentionally failed to appear at the hearing. See *State* v. *Candito*, supra, 4 Conn. App. 157–58. Viewed in the light most favorable to sustaining the verdict, the defendant's statements, combined with the sudden increase in the severity of his harassment and the closing of his savings account, demonstrate that he knew of the impending hearing date and deliberately failed to appear as required. See *State* v. *Jones*, 37 Conn. App. 437, 450, 656 A.2d 696, cert. denied, 233 Conn. 915, 659 A.2d 186 (1995). The defendant therefore cannot prevail on his first claim.

## II

The defendant next contends that he was improperly subjected to double jeopardy in violation of the fifth amendment to the United States constitution as a result of being charged with and convicted of both criminal violation of a protective order pursuant to § 53a-110b[3] and harassment in the second degree in violation of § 53a-183 (a) (3).[4] We disagree.

---

[3] General Statutes § 53a-110b (a) provides: "A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c or section 54-1k has been issued against such person, and such person violates such order."

[4] General Statutes § 53a-183 (a) provides in relevant part: "A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language; or (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile . . . or (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

Because the defendant neglected to raise this issue before the trial court, he seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[5] Because the record is adequate for review and the issue raised implicates a fundamental right, we will review the defendant's claim. Our review, however, reveals that the defendant cannot establish that a constitutional violation clearly exists and clearly deprived him of a fair trial. We conclude, therefore, that the defendant cannot satisfy all of *Golding*'s requirements and therefore cannot prevail on his double jeopardy claim.

The double jeopardy clause of the fifth amendment prohibits "not only multiple trials, but also multiple punishments for the same offense in a single trial." *State* v. *Devino*, 195 Conn. 70, 73, 485 A.2d 1302 (1985). "Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Palmer*, 206 Conn. 40, 52, 536 A.2d 936 (1988). We find that the defendant was not subjected to double jeopardy because the charges of which he was convicted arose out of separate transactions and, therefore, he was not convicted of the same offense.

The defendant has failed to establish that the charges of criminal violation of a protective order and harassment in the second degree arose out of the same trans-

---

[5] Under *Golding*, a defendant can prevail on an unpreserved constitutional claim "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.

action. The defendant's arrest and conviction for criminal violation of a protective order resulted not only from his telephone harassment of the victim, but also from the numerous and separate incidents in which he physically accosted her at her home and workplace. Conversely, the defendant was convicted of harassment in the second degree solely on the basis of his telephone calls to the victim. The defendant, therefore, has failed to demonstrate that his conviction of those charges arose out of the same transaction. See *State* v. *Snook*, 210 Conn. 244, 265, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). Even if we assume that his conviction of those charges arose from the same transaction, the charge of criminal violation of a protective order is independent of and wholly distinct from the crime of harassment in the second degree.

The United States Supreme Court in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), established the criteria for determining whether multiple charges constitute the same offense for double jeopardy purposes. *State* v. *Woodson*, 227 Conn. 1, 8, 629 A.2d 386 (1993). " '[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.' " *State* v. *Snook*, supra, 210 Conn. 264, quoting *Blockburger* v. *United States*, supra, 304. In determining whether the two offenses constitute one offense, we look only to the applicable statutes, the information and the bill of particulars. *State* v. *Peters*, 40 Conn. App. 805, 828, 673 A.2d 1158, cert. denied, 237 Conn. 925, 677 A.2d 949 (1996). Resolution of this issue, though essentially constitutional, predominantly is one of statutory construction. Id., citing *State* v. *Woodson*, supra, 8–9.

Analyzing the two charged offenses in the present situation under the *Blockburger* test, we conclude that criminal violation of a protective order and harassment in the second degree constitute separate offenses. The proof necessary to support a conviction for criminal violation of a protective order differs completely from that required for a conviction of harassment in the second degree. To prove a charge of criminal violation of a protective order, the state must demonstrate that a protective order was issued against the defendant in accordance with General Statutes §§ 46b-38c (e) or 54-1k, and it must demonstrate the terms of the order and the manner in which it was violated by the defendant. To prove the crime of harassment in the second degree, as alleged in the informations filed against the defendant, the state must show that the defendant, with the intent to harass, annoy or alarm another person, made a telephone call in a manner likely to cause annoyance or alarm.

The elements of those two crimes lack commonality or overlap. Moreover, it is clear from the plain language of the relevant statutes that the legislature intended them to address two completely different concerns. The state could have proven all of the elements of criminal violation of a protective order, yet still have been unable to convict the defendant of harassment in the second degree. Conversely, the state could have proven all of the elements of harassment in the second degree and still have been unable to convict the defendant of criminal violation of a protective order.

When the elements of multiple charges "are distinct and dissimilar"; *State* v. *Peters*, supra 40 Conn. App. 828; they simply are not the same offense for double jeopardy purposes. Consequently, the defendant's conviction of both criminal violation of a protective order and harassment in the second degree do not violate the prohibition against double jeopardy. See *State* v. *Snook*,

supra, 210 Conn. 266. The defendant's double jeopardy claim is without merit.

The judgments are affirmed.

In this opinion the other judges concurred.