STATE OF CONNECTICUT *v.* BENJAMIN CHARLES III
(AC 21771)

Flynn, Bishop and West, Js.

Argued February 10—officially released July 22, 2003

*D. Kirt Westfall,* for the appellant (defendant).

*Toni M. Smith-Rosario,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Laura DeLeo-Denslow,* former assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Benjamin Charles III, appeals from the judgment of conviction, rendered after a jury trial, of criminal violation of a protective order in violation of General Statutes (Rev. to 1999) § 53a-110b, now § 53a-223.[1] On appeal, the defendant claims that (1) the court violated his due process rights by failing to charge the jury that intent was a necessary element of the crime of violating a protective order, (2) as applied to him, § 53a-110b, now § 53a-223, is unconstitutionally vague in that it fails to provide notice that inadvertent contact could form the basis for conviction and (3) the evidence was insufficient to support a conviction for criminal violation of a protective order. We affirm the judgment of the trial court.

[1] General Statutes § 53a-223 (a) provides: "A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, or section 54-1k or 54-82r has been issued against such person, and such person violates such order."

The jury reasonably could have found the following facts. At the time of the events in this case, the defendant and the victim, Denell Battle, resided together. On February 14, 2000, there was an altercation between the defendant and the victim during which the defendant indicated that he was going to return the next day to retrieve his belongings from her apartment. On February 15, when the defendant returned, another altercation with the victim took place. The police arrived shortly thereafter and arrested the defendant, charging him with assault in the third degree in violation of General Statutes § 53a-61 (a) (1), assault in the third degree on a blind person[2] in violation of General Statutes § 53a-61a (a) and breach of the peace in violation of General Statutes (Rev. to 1999) § 53a-181 (a) (2).

On February 16, 2000, at the defendant's arraignment, the court issued a protective order forbidding the defendant from, inter alia, threatening or harassing the victim. The order explicitly allowed the defendant to contact the victim to arrange to retrieve his belongings from her home.

After his arrest, the defendant telephoned the victim twice, leaving messages on her voice mail on each occasion. In the first telephone call, the defendant, in language rife with expletives, told the victim, inter alia, that he wanted to be left alone and that he intended to come to her home to retrieve his belongings. In the subsequent call, the defendant apologized for the profanities he had used in reference to the victim in the first call. Additionally, he alluded to her possible criminal culpability concerning another matter. He also repeated his desire to be left alone and his desire for his belongings.

As a result of those telephone calls, the state charged the defendant, in a second information, with two counts

---

[2] The victim had been declared legally blind on the basis of a loss of peripheral vision.

of harassment in the second degree violation of General Statutes § 53a-183 (a) (3) and violation of a protective order in violation of § 53a-110b, now § 53a-223.[3] At the jury trial on those charges, transcripts of the defendant's two telephone calls were offered into evidence. The jury found the defendant guilty of criminal violation of the protective order and acquitted him of the harassment count. This appeal followed.

I

The defendant claims that the court violated his constitutional right to due process by failing to charge the jury that intent was a necessary element of the crime of violation of a protective order. We disagree.

As a preliminary matter, although that claim was not raised at trial, we may consider it because it implicates a fundamental right. See *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). "An accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt. . . . This court has consistently held that a claim that the judge improperly instructed the jury on an element of an offense is appealable even if not raised at trial. (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 202 Conn. 349, 363, 521 A.2d 150 (1987).

For challenges to jury instructions, we employ the following standard of review. "[A] charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it

---

[3] At trial, the state proceeded on one count of harassment in the second degree, pursuant to General Statutes § 53a-183, and violation of a protective order, pursuant to General Statutes (Rev. to 1999) § 53a-110b.

fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . We do not critically dissect the charge in order to discover possible inaccurate statements. . . . Rather, we see if [the jury instructions] gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n our task of reviewing jury instructions, we view the instructions as part of the whole trial. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. Even if instructions are found to be improper, we must further determine whether they have been prejudicial to the claiming party by adversely affecting the trial's outcome." (Internal quotation marks omitted.) *Coniglio* v. *White*, 72 Conn. App. 236, 241, 804 A.2d 990 (2002).

The court delivered, in relevant part, the following instructions on the state's burden of proof necessary to convict the defendant of violating a protective order:

"For you to find the defendant guilty of this charge, the state must prove the following elements:

"One, that a protective order was issued by the Superior Court in a case pending against the defendant. Two, that the case in which the order entered was one involving family violence. Three, and that the defendant violated said order after said order was entered by the court. . . .

"If you find that a protective order was issued by the Superior Court in the case pending against the defendant, which involves family violence, you must next determine whether the defendant violated the terms of this protective order after said order was entered by the court. The terms of a protective order prohibit,

among other things, the defendant from threatening or harassing an alleged victim. It does not prohibit the defendant from contacting her. The state alleges that the defendant has violated said order by threatening or harassing the victim, Denell Battle.

"Harass means to trouble, worry or torment. Threaten means declaring an intention or determination to injure another person or his property by the commission of a threatened crime. A threat imparts the expectation of bodily harm to one's person or harms to one's property by the crime threatened, thereby inducing fear or apprehension.

"If you find that the state has proven beyond a reasonable doubt each of the elements of the crime of violation of a protective order, then you shall find the defendant guilty. On the other hand, if you find that the state has failed to prove beyond a reasonable doubt any one of the elements, you should find the defendant not guilty."

At the core of the defendant's claim is the assertion that the violation of the protective order statute is a specific intent statute. In sum, the defendant claims that to be found guilty of violation of a protective order, the jury had to have found a specific intent on his part to commit the crime of threatening or harassment. Although the defendant does not challenge the court's instructions with respect to the threatening aspect, he does claim that the jury instructions concerning the order's proscription against harassment was inadequate. That claim is founded on the ground that the court did not instruct the jury that to be found guilty of violation of the protective order, the jury would have to conclude that the defendant was guilty of the crime of harassment.

We previously have rejected the claim advanced by the defendant. In *State* v. *Martino*, 61 Conn. App. 118, 128, 762 A.2d 6 (2000), we held that no specific intent

to harass need be proven to warrant a conviction for violation of a protective order. Having declined to adopt the argument that criminal responsibility for the violation of a protective order requires specific intent, we have not, nevertheless, held that the statute is one of strict liability. Rather, we believe that it is a general intent statute, requiring proof that one charged with its violation intended to perform the activities that constituted a violation of the protection order.

"General intent is the term used to define the requisite mens rea for a crime that has no stated mens rea; the term refers to whether a defendant intended deliberate, conscious or purposeful action, as opposed to causing a prohibited result through accident, mistake, carelessness, or absent-mindedness. Where a particular crime requires only a showing of general intent, the prosecution need not establish that the accused intended the precise harm or precise result which resulted from his acts." (Internal quotation marks omitted.) 21 Am. Jur. 2d, Criminal Law § 127 (1998).

"It is well established that [t]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Watson*, 50 Conn. App. 591, 605, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999), petition for cert. dismissed, 255 Conn. 953, 772 A.2d 153 (2001).

Although the record is plain that the court gave no instruction on general intent, such an instruction is not mandated where a defendant has not put in issue the question of whether his conduct was voluntary. See *State* v. *Pierson*, 201 Conn. 211, 217, 514 A.2d 724 (1986) ("[o]ur acknowledgement of the fundamental principle that a criminal act must be volitional does not mean that a charge to a jury that omits reference to this principle is constitutionally defective where the evidence at trial contains no suggestion that the defendant's conduct was involuntary and he has made no such claim either in the trial court or on appeal"), on appeal after remand, 208 Conn. 683, 546 A.2d 268 (1988), cert. denied, 489 U.S. 1016, 109 S. Ct. 1131, 103 L. Ed. 2d 193 (1989). "Until something in the evidence indicates the contrary, the court may presume the defendant intended the prohibited bodily movements that constitute the offense and that he has acted under no duress, unlawful inducement in the nature of entrapment, or lack of requisite mental capacity." Id., 218. Here, there was no evidence presented by the defendant disclaiming his intent to make the offending telephone calls or to employ the language and leave the messages that were later presented, in transcription, to the jury. Under those circumstances, while the inclusion of an instruction on general intent would have made the instruction more complete, its absence from the charge was neither constitutionally impermissible nor harmful to the defendant.

II

The defendant additionally claims that the violation of the protective order statute, as applied to him, is unconstitutionally vague for its failure to provide notice that inadvertent conduct may form the basis of a crime. He specifically claims that the statute is overbroad, and his assertion that inadvertent conduct may be implicated by the reach of the statute sufficiently implicates

a claim of constitutional overbreadth to warrant our response.

The defendant claims that because the court failed to specify the quality of intent required for a finding of guilt under § 53a-110b, now § 53a-223, the court effectively converted the statute into one of strict liability that did not give him fair warning of the conduct it proscribed and put him at risk of arrest for inadvertent conduct. Thus, the defendant claims, the jury was allowed to determine whether he could be convicted of a violation of the protective order on the basis of inadvertent acts or speech. He contends that because the statute as charged allows conviction on the basis of conduct he characterizes as relatively innocuous telephone calls, the statute's vagueness infringes on first amendment rights. Finally, in that regard, the defendant claims that the court's failure to give any charge on criminal intent effectively removed the notion of mens rea from the statute, leaving the jury with the impression that the statute was one of strict liability, thereby chilling expression protected by the first amendment.

In response, the state argues that because a protective order issued pursuant to General Statutes § 46b-38c is tailored to address a preexisting family violence situation consistent with the state's interest in protecting a victim of domestic violence from fear, violence and intimidation, a defendant is placed on notice that he will be held liable for contact with the victim that he can reasonably foresee would have the effect of harassing or threatening the victim. The state argues further that the foreseeability aspect of violation of a protective order by harassing or threatening a victim of domestic violence is analogous to that which removes threats of violence from first amendment protection. We agree.

"A defective instruction on an essential element of the crime charged raises a constitutional issue. An alleged

defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled." (Internal quotation marks omitted.) *State* v. *Gallichio*, 71 Conn. App. 179, 184, 800 A.2d 1261 (2002).

We previously have stated that "[t]he doctrines of vagueness and overbreadth are so closely related that [s]ometimes the two are functionally indistinguishable . . . . The essence of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment." (Citation omitted; internal quotation marks omitted.) *State* v. *Ryan*, 48 Conn. App. 148, 158, 709 A.2d 21, cert. denied, 244 Conn. 930, 711 A.2d 729, cert. denied, 525 U.S. 876, 119 S. Ct. 179, 142 L. Ed. 2d 146 (1998). Because of the close kinship of the defendant's claims that the statute is vague and overbroad, and in the absence of a separate analysis by the defendant of the two claims, we evaluate them together.

The void for vagueness doctrine is based on the principle that "laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *State* v. *Cavallo*, 200 Conn. 664, 667, 513 A.2d 646 (1986); *State* v. *Higgins*, 74 Conn. App. 473, 488, 811 A.2d 765, cert. denied, 262 Conn. 950, 817 A.2d 110 (2003). It is a concept that flows from federal and state constitutional guarantees of due process, and it requires that "statutes with penal consequences provide sufficient notice to citizens to apprise them of what conduct is prohibited." *State* v. *Burton*, 258 Conn. 153, 158–59, 778 A.2d 955 (2001).

The doctrine embodies two central precepts: "[T]he right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless

law enforcement." (Internal quotation marks omitted.) *State* v. *Payne*, 240 Conn. 766, 777, 695 A.2d 525 (1997). "If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties." (Internal quotation marks omitted.) Id., 778. "The void for vagueness doctrine accords due process protection in that it requires statutes (1) to provide fair notice of the conduct governed by them and (2) to prescribe minimum guidelines to govern law enforcement." (Internal quotation marks omitted.) *State* v. *Springmann*, 69 Conn. App. 400, 407, 794 A.2d 1071, cert. denied, 260 Conn. 934, 802 A.2d 89 (2002). "[A] party attacking the constitutionality of a validly enacted [statute] bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt. *State* v. *Breton*, 212 Conn. 258, 269, 562 A.2d 1060 (1989); *Zapata* v. *Burns*, 207 Conn. 496, 507–508, 542 A.2d 700 (1988)." (Internal quotation marks omitted.) *Ramos* v. *Vernon*, 254 Conn. 799, 814, 761 A.2d 705 (2000). When a penal statute implicates rights protected by the first amendment, the statute's meaning must be capable of precise ascertainment in order to repel a vagueness challenge because "[w]here first amendment rights are at stake, vague laws may cause citizens to avoid constitutionally protected conduct for fear of incurring criminal prosecution." *State* v. *Proto*, 203 Conn. 682, 696, 526 A.2d 1297 (1987).

In assessing the constitutionality of a statute assailed as void for vagueness, our normal inquiry is to test the constitutional viability of the statute when applied to the particular facts at hand. See *State* v. *Springmann*, supra, 69 Conn. App. 411. We note that the defendant makes no claim that the statute is facially vague, but rather that it is vague as applied to him in these particular circumstances. We analyze it on that basis.

With those precepts in mind, we begin our constitutional analysis by noting, first, that in pertinent part, a protective order, including the order issued in this case, directs that a defendant "refrain from threatening, harassing, assaulting, molesting, or sexually assaulting the victim."[4] When assessing a statute that implicates conduct as well as speech in a claim that the statute is overbroad, we are mindful of the standard enunciated by the United States Supreme Court that "[w]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick* v. *Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973); see also *Gormley* v. *Director, Connecticut State Dept. of Probation*, 632 F.2d 938 (2d Cir.), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980).

Initially, we note that the family violence protection order issued in this instance is narrow in scope. It is directed against one person and on behalf of an identified victim. Thus, it is not broad in its sweep.[5] Additionally, that order issued pursuant to § 46b-38c arose within a preexisting relationship between the victim and the defendant. As such, the family violence protective order serves notice to a defendant that any conduct on his part directed to the named victim that has the

[4] See Form JD CR 58, Rev. 3-99, family violence protective order. It is undisputed that the court issued such an order to the defendant.

[5] By the terms of General Statutes § 53a-223 (a), "A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, or section 54-1k or 54-82r has been issued against such person, and such person violates such order." We note that in each case, the order is issued for the protection of an identified victim or victims. In the case of General Statutes § 54-1k, such an order is issued to protect a stalking victim; in the case of General Statutes § 54-82r, an order is issued to protect an identified witness in a criminal prosecution; and in the case of General Statutes § 46b-38c, a family violence protective order is issued to protect a named victim who, by statutory definition, is a member of a statutorily defined group.

reasonably foreseeable effect of harassing or threatening her is proscribed. The messages the defendant left on the victim's telephone answering machine included the following statements: "You leave me the fuck alone. I ain't calling on your people and telling no shit. That's what the fuck is wrong with you. You put third parties in my fucking business. You want bullshit—you're going to get it," and "the people from my place, the management, you know, from selling my car sticker. Yeah, they're gonna be there to lock your ass up on the twenty-third of March when we have to be there at court. I didn't give your name yet, but I'm thinking about it. According to the government, you have not paid $800 for eighteen months. I got proof of it there because but I got letters in the mail. . . . You don't give me my stuff, then you're gonna have problems—you're gonna have more problems—cause my problems, I'm gonna have is a fine. You're facing jail, not me. I'm not facing jail. You're facing jail now—not me." Given the content of those messages, we believe it was well within the province of the jury to infer that the reasonable, foreseeable effect of those messages on the victim was to harass or to threaten her.

Mindful that we have determined that § 53a-110b, now § 53a-223, is a general intent and not a specific intent statute, we next turn to a consideration of whether that factor renders the statute impermissibly vague as applied in this instance. That is, because we have determined that to prove criminal culpability under § 53a-110b, the state need only prove that a defendant engaged in conduct that an actor should reasonably foresee would harass or threaten a victim and, reciprocally, that the state need not prove that the defendant specifically intended his conduct to harass or to threaten a victim, we must assess whether the absence of specific intent as an element in the statute renders it unconstitutionally vague or broad.

We have held that "to surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. . . . Under appropriate circumstances, the presence of a specific intent element in the offense may purge a potentially vague criminal statute of constitutional infirmity." (Internal quotation marks omitted.) *State* v. *Payne*, 40 Conn. App. 1, 7, 669 A.2d 582 (1995), aff'd, 240 Conn. 766, 695 A.2d 525 (1997). In considering the constitutionality of § 53a-183, an allied though not analogous statute, our Supreme Court characterized as proper the trial court's instruction to the jury: "For purposes of the statute, 'harass' means to trouble, worry, torment . . . ." (Internal quotation marks omitted.) *State* v. *Murphy*, 254 Conn. 561, 574 n.24, 757 A.2d 1125 (2000). These are the identical terms utilized by the trial court in this instance in its instructions to the jury concerning the portion of the charge of violating a protective order relating to harassment. The record reveals that the court charged the jury that harass means to "trouble, worry or torment." As we noted in an analogous circumstance, an appellate court's prior interpretative gloss on the meaning of a term provides a "sufficient core of meaning to remedy any facial vagueness that might otherwise exist." (Internal quotation marks omitted.) *State* v. *Cummings*, 46 Conn. App. 661, 673–74, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997).

We conclude that the terms of the family violence protective order issued in this instance were adequate to give the defendant fair warning that the act of leaving two expletive and posturing laden messages on the victim's telephone answering machine would constitute a violation of the order prohibiting him from harassing or threatening her. Under those circumstances, the consequence of the court's charge was not impermissibly to curtail the defendant's constitutional right to speech,

and the charge that outlined in detail the elements of behavior proscribed by the protective order was neither impermissibly vague nor overbroad.

### III

We determine now whether there was sufficient evidence before the jury by which it could find beyond a reasonable doubt that the defendant had violated the protective order issued by the court. We conclude that there was sufficient evidence.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving

substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Carcare*, 75 Conn. App. 756, 778–79, 818 A.2d 53 (2003). "Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994).

On February 16, 2001, the court issued a protective order, pursuant to § 46b-38c (d), which prohibited the defendant from, inter alia, threatening or harassing the victim. The defendant subsequently made two telephone calls to the victim and left messages on both occasions. Transcripts of the two messages were read into the record.

The defendant argues that the state failed to prove its case because the jury returned a verdict of acquittal on the harassment charge. As we previously have noted, a violation of a protective order does not incorporate the specific intent to harass. See part I; *State* v. *Martino*, supra, 61 Conn. App. 128. All that is necessary is a general intent that one intend to perform the activities that constitute the violation. "The elements of those two crimes lack commonality or overlap. Moreover, it is clear from the plain language of the relevant statutes that the legislature intended them to address two completely different concerns. The state could have proven all of the elements of criminal violation of a protective order, yet still have been unable to convict the defendant of harassment in the second degree." *State* v. *Martino*, supra, 128.

On the basis of our review of the record, we conclude that there was sufficient evidence before the jury from which it could conclude that the defendant had violated the protective order issued by the court. The two messages left by the defendant were replete with profanities and thinly disguised threats. For example, in an excerpt from the first message, the defendant stated: "And Donna says you was a sneaky bitch. My people want nothing to do with you. I just want my shit when I come over there with the cops. And you can call anybody else you want. My family know . . . . Okay. You leave me the fuck alone. . . . You put third parties in my fucking business. You want bullshit—you're gonna get it. So, you better leave me the fuck alone." In the second message, the defendant went on to state: "Yeah, they're gonna be there to lock your ass up on the twenty-third of March when we have to be there at court. . . . You don't give me my stuff, then you're gonna have problems. You're gonna have more problems—cause my problems. I'm gonna have a fine. You're facing jail, not me." The tone of the messages was menacing, and the jury could have reasonably concluded that the defendant was threatening or harassing the victim, and, as such, that he had violated the protective order.

The judgment is affirmed.

In this opinion the other judges concurred.