STATE OF CONNECTICUT *v.* SHARON PATTERSON
(AC 31597)

DiPentima, C. J., and Beach and Schaller, Js.

Argued May 26—officially released August 30, 2011

*Mary Beattie Schairer*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Michael A. Pepper*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Sharon Patterson, appeals from the judgment of conviction, following a trial to the court, of one count of criminally negligent homicide in violation of General Statutes § 53a-58, two counts of risk of injury to a child in violation of General Statutes § 53-21 and two counts of cruelty to persons in violation of General Statutes § 53-20. The defendant claims that because of her mental disability there was insufficient evidence to support her conviction of (1) criminally negligent homicide, (2) cruelty to persons and (3) risk of injury to a child under the "situation prong" of § 53-21 (a) (1).[1] She also claims (4) that there was insufficient evidence to support her conviction of

---

[1] "[W]e long have recognized that subdivision (1) of § 53-21 [(a)] prohibits two different types of behavior: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the [child's] moral or physical welfare . . . and (2) acts directly perpetrated on the person of the [child] and injurious to his [or her] moral or physical well-being. . . . Thus, the first part of § 53-21 [(a) (1)] prohibits the creation of *situations* detrimental to a child's welfare, while the second part proscribes injurious *acts* directly perpetrated on the child." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Gewily*, 280 Conn. 660, 668, 911 A.2d 293 (2006). We distinguish these separate provisions by using the terms "situation prong" and "act prong." See *State* v. *Aziegbemi*, 111 Conn. App. 259, 267, 959 A.2d 1, cert. denied, 290 Conn. 901, 962 A.2d 128 (2008).

risk of injury to a child under the "act prong" of § 53-21 (a) (1) because her use of hot sauce to discipline the victim did not constitute an "act likely to impair the health" of the victim. We agree that there is insufficient evidence to support a conviction under the act prong of our risk of injury statute, but disagree in all other respects. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

The court found or reasonably could have found from the evidence presented the following facts. The victim,[2] a two year old boy, was placed in the care of the defendant by his mother on February 18, 2008.[3] On that date, the victim was in good health.

Shortly thereafter, the defendant began to restrict the victim's access to fluids in order to correct certain behavioral problems. Specifically, the defendant did not allow the victim to consume liquids after 8 p.m. in order to prevent him from wetting the bed. The defendant also prevented the victim from consuming liquids at other times in order to encourage him to consume solid food.[4] As a result of such restrictions, the defendant gave the victim little or nothing to drink from the morning of February 22, 2008, to the morning of February 26, 2008.

Moreover, at some point during the victim's stay, the defendant attempted to discourage him from drinking

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] On at least three occasions, the victim's mother agreed to extend the victim's stay with the defendant. These extensions occurred on February 18, 19, and 21, 2008. Each of these extensions occurred pursuant to a request or at the express invitation of the defendant.

[4] The trial court heard testimony relating to one incident in which the defendant's brother had given the victim something to drink, but the defendant took it away. According to the defendant's brother, "she wasn't going to give him nothing to drink until he ate his food."

out of cups belonging to other people. In order to accomplish this, the defendant placed a small amount of hot sauce in a cup and left it on the kitchen table. The victim consumed hot sauce from a cup on at least one occasion.

In the days immediately preceding his death, the victim began to exhibit numerous symptoms of dehydration. He had dry, cracked lips, a sunken face and a diminished appetite. He also had lost a significant amount of weight. On the morning of February 26, 2008, the defendant discovered that the victim was not breathing. Shortly thereafter, the defendant contacted emergency personnel by telephone. During this call, the defendant stated that the victim was "dehydrated." The deputy chief medical examiner later confirmed that the child had died due to insufficient fluid intake.[5]

The defendant possesses an IQ of 61. This score places her within the bottom one half of 1 percent of the population. Due to this cognitive disability, the defendant did not know that withholding liquids could cause the victim to die. The defendant did, however, generally understand that depriving someone of fluids can cause dehydration. Additional facts will be set forth as necessary.

The state charged the defendant with one count of manslaughter in the first degree pursuant to General Statutes § 53a-55, two counts of risk of injury to a child and two counts of cruelty to persons. The trial court found the defendant not guilty of manslaughter in the first degree and of the lesser included offense of manslaughter in the second degree in violation of General Statutes § 53a-56. The trial court, however, convicted

---

[5] The deputy chief medical examiner testified at trial that there was "no evidence of natural disease, chronic or acute, that would have caused dehydration" and concluded that the child's death was caused by improper care.

the defendant of the lesser included offense of criminally negligent homicide, two counts of risk of injury to a child and two counts of cruelty to persons. The court imposed a total effective sentence of ten years incarceration, suspended after five years, with five years probation.[6] This appeal followed.

We begin our analysis by setting forth the standard of review that governs our resolution of the present case. "Appellate analysis of [a sufficiency of the evidence claim] requires us to undertake a well defined, twofold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the . . . verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the [finder of fact] could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Monahan*, 125 Conn. App. 113, 118–19, 7 A.3d 404 (2010), cert. denied, 299 Conn. 926, 11 A.3d 152 (2011).

To the extent that the defendant calls upon this court to determine the precise mental state required for conviction of various statutory offenses, we are presented with an issue of statutory interpretation, over which our review is plenary. See *State* v. *Gonzalez*, 300 Conn. 490, 499, 15 A.3d 1049 (2011).

## I

The defendant claims that her diminished mental capacity prevented her from forming the mental state

---

[6] The trial court merged the two counts alleging cruelty to persons and sentenced the defendant as follows: one year imprisonment on the charge of criminally negligent homicide; ten years imprisonment, suspended after five, with five years probation on the first count of risk of injury to a child; one year imprisonment on the second count of risk of injury to a child; and three years imprisonment for cruelty to persons.

associated with criminally negligent homicide and, consequently, that there is insufficient evidence to support her conviction on that charge. We disagree.

Section 53a-58 (a) provides in relevant part: "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person . . . ." General Statutes § 53a-3 (14) provides: "A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when [she] fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

A failure to perceive the risks created by one's actions distinguishes criminal negligence from the more culpable mental state of recklessness. General Statutes § 53a-3 (13) provides: "A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when [she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation . . . ." Consequently, in order for a defendant to possess the mental state of recklessness, he or she must be aware of the risk created. A defendant need not, however, possess such knowledge to be convicted of criminal negligence. Section 53a-3 (14) requires simply that the defendant fail "to perceive a substantial and unjustifiable risk . . . ."

These two statutory definitions, however, are similar in that they both require a gross deviation from the

standard of conduct that a reasonable person would observe in the situation. See *State* v. *Salz*, 26 Conn. App. 448, 455, 602 A.2d 594 (1992), aff'd, 226 Conn. 20, 627 A.2d 862 (1993).[7] Although it is undoubtedly true that conviction of a crime containing the mental state of criminal negligence requires proof of a more substantial deviation from this standard than necessary to establish civil negligence; *State* v. *Ortiz*, 29 Conn. App. 825, 833, 618 A.2d 547 (1993); the standard remains inherently objective in nature. Consequently, the "[p]eculiarities of a given individual, such as intelligence, experience, and physical capabilities, are irrelevant in determining criminal negligence, since the standard is one of the reasonably prudent person." 40 C.J.S. 524, Homicide § 136 (2006).

The defendant argues that the factual finding made by the trial court pertaining to *recklessness* within the context of manslaughter in the first and second degrees also precludes conviction on the charge of criminally *negligent* homicide. Specifically, the defendant draws our attention to the following statement made by the trial court: "The reason I don't think the state proved recklessness is because I don't think the state proved beyond a reasonable doubt that the defendant was aware of—consciously aware of the fact that by withholding liquids from this child, that the child could become dehydrated and die. I don't think, due to her cognitive disabilities, she was aware of that, and that's an element of [manslaughter in the first and second

---

[7] In *State* v. *Salz*, supra, 26 Conn. App. 455, this court noted that the second prong of § 53a-3 (13), "incorporates an objective element by defining a 'substantial and unjustifiable risk' to 'be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.'" The definition of criminal negligence utilizes the same standard when it states that "[t]he risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ." General Statutes § 53a-3 (14).

degrees]." According to the defendant, this finding implies that she was cognitively unable to perceive the risks created by her actions. Absent this ability, the defendant argues, she cannot be found guilty of criminally negligent homicide.

Even if we were to agree that this statement necessarily implies that the defendant was incapable of perceiving the risk of death created by her actions, as we have just explained, we cannot consider the defendant's diminished mental capacity in the context of criminally negligent homicide because we employ an objective standard. Construing, as we must, the evidence presented previously in the light most favorable to sustaining the court's finding of guilt, a reasonable finder of fact could have concluded that the defendant failed to perceive a substantial and unjustifiable risk and that this failure constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation. On the basis of the facts so construed, the defendant's conviction of criminally negligent homicide is supported by sufficient evidence.[8]

## II

The defendant next claims that a conviction of cruelty to persons pursuant to § 53-20 (a) (1) and (b) (1) requires proof of specific intent and that, in light of her cognitive disability, there was insufficient evidence

---

[8] The defendant's reliance on *State* v. *Burge*, 195 Conn. 232, 487 A.2d 532 (1985), is misplaced. In that case, our Supreme Court concluded that evidence pertaining to mental capacity is relevant to show the absence of recklessness. Id., 240–41. This holding represents an expansion of *State* v. *Hines*, 187 Conn. 199, 445 A.2d 314 (1982), in which the Supreme Court held that similar evidence was admissible to show an absence of specific intent. Id., 204. Both *Burge* and *Hines* may, however, be distinguished from the present case in that the definition of "criminal negligence," unlike the definitions of "intentionally," "knowingly" and "recklessly," does not require the defendant to be subjectively aware of the existence of a substantial and unjustifiable risk. General Statutes § 53a-3 (11) through (14).

contained within the record to support her conviction under that statute. We disagree.

Section 53-20 provides in relevant part: "(a) (1) Any person who intentionally tortures, torments or cruelly or unlawfully punishes another person or intentionally deprives another person of necessary food, clothing, shelter or proper physical care shall be fined not more than five thousand dollars or imprisoned not more than five years or both. . . . (b) (1) Any person who, having the control and custody of any child under the age of nineteen years, in any capacity whatsoever, intentionally maltreats, tortures, overworks or cruelly or unlawfully punishes such child or intentionally deprives such child of necessary food, clothing or shelter shall be fined not more than five thousand dollars or imprisoned not more than five years or both." Section 53a-3 (11), in turn, provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

"In deciding whether a criminal statute requires general or specific intent, our Supreme Court regularly has invoked the following distinction. When the elements of a crime consist of a description of a particular act and a mental element not specific in nature, the only issue is whether the defendant intended to do the proscribed act. If he did so intend, he has the requisite *general intent* for culpability. When the elements of a crime include a defendant's intent to achieve some result additional to the act, the additional language distinguishes the crime from those of general intent and makes it one requiring *a specific intent*." (Emphasis in original; internal quotation marks omitted.) *State* v. *Nixon*, 32 Conn. App. 224, 249, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995).

Section 53-20 (a) (1) and (b) (1) each proscribe a series of particular acts. These statutory provisions do

not, on their face, make reference to a defendant's intent to achieve some result additional to the acts proscribed. Consequently, conviction under § 53-20 (a) (1) and (b) (1) requires proof of general intent.[9] The evidence contained within the record indicates that the defendant intentionally withheld fluids from the victim in order to prevent him from wetting the bed and to encourage him to eat more during meals. The court's conclusion that the defendant possessed the mental state required for conviction pursuant to § 53-20 (a) (1) and (b) (1) is therefore supported by sufficient evidence.[10]

## III

The defendant next claims that, in light of her diminished mental capacity, there was insufficient evidence

---

[9] This conclusion also forecloses the defendant's alternative argument that conviction pursuant to § 53-20 (a) (1) and (b) (1) requires evidence that the defendant possessed a "general intent" to deprive the victim of *necessary* food. General intent requires only that the proscribed act taken by the defendant be volitional in nature. *State* v. *Charles*, 78 Conn. App. 125, 131, 826 A.2d 1172 ("[g]eneral intent is the term used to define the requisite mens rea for a crime that has no stated mens rea; the term refers to whether a defendant intended deliberate, conscious or purposeful action, as opposed to causing a prohibited result through accident, mistake, carelessness, or absent-mindedness" [internal quotation marks omitted]), cert. denied, 266 Conn. 908, 832 A.2d 73 (2003).

[10] In a single paragraph, the defendant appears to argue that § 53-20 is unconstitutionally vague when applied to the facts of the present case. This paragraph is, however, devoid of citations to relevant principles of law and application of those principles to § 53-20. To the extent that this argument presents a separate claim, we decline to afford it review. See *State* v. *Claudio C.*, 125 Conn. App. 588, 600, 11 A.3d 1086 (2010) ("[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this

that she possessed the mental state required for a conviction of risk of injury to a child under the situation prong of § 53-21 (a) (1). We disagree.

Section 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired . . . shall be guilty of a class C felony . . . ."

"In order to establish the crime of risk of injury to a child under the situation prong of § 53-21 (a) (1), the state must prove that the defendant *wilfully* or *unlawfully* caused or permitted a child under the age of sixteen years to be placed in a situation where the life or limb of the child was endangered, the health of the child was likely to be injured, or the morals of the child were likely to be impaired. Conduct is wilful when done purposefully and with knowledge of [its] likely consequences. . . . A defendant's failure to act when under a duty to do so, which causes a dangerous situation to exist or continue, may be sufficient to support a conviction under § 53-21 (a) (1)." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Na'im B.*, 288 Conn. 290, 297, 952 A.2d 755 (2008).

"Specific intent is not a necessary requirement of [§ 53-21]. Rather, the intent to do some act coupled with a reckless disregard of the consequences . . . of that act is sufficient to [establish] a violation of the statute." (Internal quotation marks omitted.) *State* v. *Sorabella*, 277 Conn. 155, 173, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006). In order to be found guilty of risk of injury to a child, the defendant

court." [Internal quotation marks omitted.]), cert. denied, 300 Conn. 910, 12 A.3d 1005 (2011).

must have been aware of and consciously disregarded a substantial and unjustifiable risk that withholding liquids could cause the victim harm. General Statutes § 53a-3 (13).[11]

The court's conclusion that the defendant possessed the mental state necessary for conviction under § 53-21 is supported by the evidence contained within the record. The defendant, on the morning of the victim's death, observed the victim's body and correctly indicated to emergency personnel that the child was dehydrated. From this, the court reasonably could have concluded that the defendant understood the causal relationship between depriving the victim of liquids and the physiological condition known as dehydration that he suffered as a result. The defendant's decision to deprive the victim of fluids for four days, in light of her understanding that dehydration could result, demonstrates a reckless disregard for the possibility that the victim might be harmed by her actions.[12] Consequently, the defendant's conviction under the situation prong of § 53-21 (a) (1) is supported by sufficient evidence.

IV

Finally, the defendant argues that the evidence presented at trial was insufficient to support the trial

---

[11] Risk of injury also requires proof of general intent. *State* v. *Sorabella,* supra, 277 Conn. 172–73. This requires evidence that the defendant committed a volitional act. See *State* v. *Charles,* 78 Conn. App. 125, 131, 826 A.2d 1172, cert. denied, 266 Conn. 908, 832 A.2d 73 (2003). The evidence contained within the record indicates that the defendant intentionally withheld liquids from the victim in order to prevent him from wetting the bed and to encourage him to eat more during meals. Consequently, this element has been met.

[12] This is logically consistent with the court's conclusion that the defendant lacked the mental state of recklessness in relation to the charges of manslaughter in the first and second degrees. Although the defendant has demonstrated the ability to understand that withholding fluids from the victim could cause him to become dehydrated, this conclusion does not necessarily compel a finding that the defendant was aware of the risk that dehydration could cause the victim to die.

court's conclusion that giving "a few drops" of hot sauce to the victim was likely to impair his health and, therefore, her conviction of risk of injury to a child under the act prong of § 53-21 (a) (1) should be reversed. We agree.[13]

The court found or reasonably could have found from the evidence presented at trial the following additional facts relevant to our analysis. On at least one occasion,[14] the defendant placed hot sauce in a cup and left it on the kitchen table in order to discourage the victim from drinking out of cups belonging to other people. Later, the victim picked up the cup and drank "a few drops" of hot sauce from it. At trial, the victim's pediatrician, Lisa Visscher, testified: "If a child continually tries to drink something that is hot and painful, he or she will learn not to drink the thing that is painful to them . . . ." From these facts, the court expressly found that "giving a child of the age of twenty-three months, of those tender years, hot sauce to [drink] would constitute blatant physical abuse."

Section 53-21 (a) provides in relevant part: "Any person who (1) . . . does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony. . . ." Under the act prong of our risk of injury statute "[t]he four elements the [fact finder] needed to find to return a verdict of guilty are: (1) the victim was less than sixteen years old; (2) the defendant committed an act upon the victim; (3) *the act was likely to be injurious to the victim's health* . . . and (4) the

_____

[13] It is important to note at the outset of this inquiry that the state did not pursue conviction on this count under a theory that the hot sauce contributed to the victim's dehydration. Indeed, the prosecutor clearly stated to the court: "I'm not saying that the cause of death was related to the hot sauce. I'm saying that giving a child hot sauce . . . is an act which constitutes risk of injury for a [twenty-three month old child]."

[14] It is unclear how many times this sequence of events occurred. Although the defendant indicated to the police that it happened twice, the court found that it occurred "on at least one occasion."

defendant had the general intent to commit the act upon the victim." (Emphasis added.) *State* v. *March*, 39 Conn. App. 267, 275, 664 A.2d 1157, cert. denied, 235 Conn. 930, 667 A.2d 801 (1995).

"The relevant inquiry is whether the defendant committed any act that was likely to endanger the life or limb, or impair the health, of the [victim], not whether the [victim] actually [was] injured. Lack of an actual injury to either the physical health or morals of the victim is irrelevant . . . actual injury is not an element of the offense." (Internal quotation marks omitted.) *State* v. *Davila*, 75 Conn. App. 432, 437, 816 A.2d 673, cert. denied, 264 Conn. 909, 826 A.2d 180 (2003), cert. denied, 543 U.S. 897, 125 S. Ct. 92, 160 L. Ed. 2d 166 (2004).

The state argues that "in all probability, the victim would have been injured because he would have felt pain or would have suffered impairment to breathing, swallowing or blurry vision in reaction to ingesting the hot sauce." Our review of the record reveals that the state presented no evidence indicating that the victim suffered, or was likely to suffer, these consequences. The victim's pediatrician testified as to what she believed the victim's reaction to drinking something "hot and painful" would be. She did not testify that a few drops of hot sauce would have been likely to cause the victim pain. The state argues, however, that such effects may be inferred from the inherently spicy nature of hot sauce. We are not persuaded.

In *State* v. *Padua*, 273 Conn. 138, 869 A.2d 192 (2005), the defendants were convicted of violating § 53-21 for packaging marijuana next to boxes of food in a communal dining area when two young children were present. In upholding the conviction, the court stated that finders of fact "are not expected to lay aside matters of

common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) Id., 157. After a detailed analysis of laws criminalizing the possession and distribution of marijuana and depictions of marijuana consumption contained in various media sources, the court concluded that "it was reasonable for the jury to infer, on the basis of its own common knowledge and experience, that the ingestion of raw marijuana would likely be harmful to the health of a child." Id.

The present case is distinguishable from *Padua* by the nature and the amount of the substance provided to the child. Unlike marijuana and other drugs, hot sauce is not a controlled substance.[15] Indeed, it is often consumed in small amounts as a condiment on foods with no ill effect. Although it is possible that forcing a child to consume a larger volume of hot sauce could constitute a violation of § 53-21, the evidence presented at trial indicates only that the victim consumed "a few drops." Although a reasonable finder of fact could infer from his or her own observations and experience that hot sauce is spicy, and therefore inherently unpalatable to many individuals, one cannot assume that a small quantity is likely to result in injury absent additional evidence.[16] Accordingly, there is insufficient evidence

[15] See *State* v. *March*, supra, 39 Conn. App. 267 (giving four year old child cup containing rum violates § 53-21).

[16] This conclusion is consistent with our ruling in *State* v. *Winot*, 95 Conn. App. 332, 897 A.2d 115 (2006), rev'd in part on other grounds, 294 Conn. 753, 988 A.2d 188 (2010). In that case, the defendant forcibly took a child by her arm and attempted to pull her toward his car. Id., 336. The defendant was convicted of violating § 53-21. On appeal to this court, the state urged us to uphold the defendant's conviction under a theory that the defendant's "conduct was culpable because it created a cognizable risk that the victim would be hit by traffic in the street." Id., 361. We disagreed, stating: "The only evidence before the jury regarding traffic . . . was the victim's testimony on direct examination that, when the defendant let go of her arm and ran back

to support the defendant's conviction under the act prong of § 53-21 (a) (1).

The judgment is reversed only as to the second count of risk of injury to a child and the case is remanded to the trial court with direction to render judgment of acquittal on that charge and for resentencing. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

to his car, 'he almost got hit by a lady in a maroon car.' The state failed to present any other evidence regarding the flow of traffic . . . in general or on the night of [the incident], or the victim's proximity to such traffic if it existed." Id., 361–62. Although we noted that "[j]urors are expected to bring their common sense and common experience to the deliberation process," we concluded "that the victim's statement alone, viewed in the light most favorable to the prosecution could not permit a rational trier of fact to conclude, without resorting to speculation and conjecture, that the defendant's conduct was likely to jeopardize the victim's physical health." Id., 362.