## STATE OF CONNECTICUT *v.* MICHAEL ANCONA
## (AC 30412)

Beach, Robinson and Peters, Js.

Argued February 5—officially released April 6, 2010

inadequate brief." (Internal quotation marks omitted.) *Cooke* v. *Cooke*, 99 Conn. App. 347, 353, 913 A.2d 480 (2007).

*Vincent F. Sabatini*, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *David M. Carlucci*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Michael Ancona, appeals from the judgment of conviction, following a trial to the court, of permitting a dog to roam at large in violation of General Statutes § 22-364 (a).[1] The defendant claims that (1) the court improperly held him responsible as a keeper of a dog when the owner was present and known to the authorities, and (2) the state adduced insufficient evidence to sustain his conviction. We affirm the judgment of the trial court.

The court, as the finder of fact, reasonably could have found the following facts. In the morning of July 5, 2006, Terry Rutenberg was running with her dog, a vizsla, on Wood Pond Road in Farmington. As Rutenberg and her dog passed the defendant's house at 79 Wood Pond Road, a muscular pit bull charged from the defendant's house and ran into the street. The pit bull then began to bite Rutenberg's dog. Rutenberg called for help. After a while, the defendant emerged from his house and called the pit bull by its name, Goomba. When the defendant was unable to stop the pit bull from continuing to bite Rutenberg's dog, Jacqueline Ancona, the defendant's wife, emerged from the house carrying a long pole similar to the type used to clean a swimming pool. She struck the pit bull with the pole, thereby causing the pit bull to scurry away momentarily.

---

[1] The defendant also was charged with and found not guilty of nuisance in violation of General Statutes § 22-363.

Rutenberg picked up her dog and began walking away. The pit bull followed Rutenberg and her dog and jumped on them, biting Rutenberg's wrist. Thereafter, Rutenberg's husband telephoned the police.

Among the officers responding to the scene was Charlene Rogers, a Farmington animal control officer. She knocked on the door of the defendant's house. When no one answered, she left a business card and a note requesting that someone contact her immediately. Shortly thereafter, the defendant contacted Rogers and told her that he would meet her at his residence. When Rogers arrived at the defendant's residence, she explained that the pit bull would need to be quarantined for fourteen days. The defendant became "irate, very loud [and] vulgar" and stated that Rogers was not taking "his dog." The defendant eventually signed the quarantine papers and assisted Rogers in loading the dog onto her truck.

Following a trial to the court, the court found the following. The defendant was a keeper of the pit bull, Goomba. The pit bull left the defendant's property and attacked Rutenberg's dog on a public highway. The defendant was found guilty of permitting a dog to roam at large and was fined $75 plus fees and costs. This appeal followed.

I

The defendant first claims that it was improper for the court to hold him responsible for the dog's actions as the dog's keeper when the owner of the dog, Jacqueline Ancona, was known to the authorities, lived in the same house as the defendant and was present when the incident occurred. He argues that under such circumstances the owner alone is responsible and not the keeper. We disagree.

This is an issue of statutory construction. "Issues of statutory construction raise questions of law, over

which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Fernando A.*, 294 Conn. 1, 13, 981 A.2d 427 (2009).

Section 22-364 (a) provides in relevant part: "No owner *or* keeper of any dog shall . . . allow such dog to roam at large on any portion of any public highway and not attended or under control of such owner or keeper or his agent . . . ." (Emphasis added.)

The defendant's interpretation of the statute, namely, that a keeper cannot be held liable if the owner is known and present at the time of the incident, is contrary to the plain language of the statute. According to the plain language of § 22-364 (a), an "owner *or* keeper" is prohibited from allowing a dog to roam on a public highway. (Emphasis added.) The language that "no owner or

keeper" shall allow a dog to roam quite clearly indicates that neither those who are owners of dogs nor those who are keepers of dogs may allow a dog to roam. The fact that an owner allows a dog to roam does not exonerate a keeper who also allows the dog to roam. Thus, either the owner or keeper or both can be held liable for a violation of the statute. Accordingly, as the keeper of the dog, the defendant could be held liable under the statute, regardless of whether the owner was present and known to the authorities.

## II

The defendant claims, alternatively, that there was insufficient evidence to support a finding that (1) he was the keeper of the dog and (2) the dog had roamed. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hicks*, 101 Conn. App. 16, 21, 919 A.2d 1052 (2007).

General Statutes § 22-327 (6) provides that " '[k]eeper' means any person, other than the owner, harboring or having in his possession any dog . . . ." "To harbor a dog is to afford lodging, shelter or refuge to it. . . . [P]ossession cannot be fairly construed as anything short of the exercise of dominion and control [over the dog]." (Citations omitted; internal quotation marks omitted.) *Falby* v. *Zarembski*, 221 Conn. 14, 19, 602 A.2d 1 (1992) (discussing § 22-327 [6]). Exercising control over the actions of a dog as well as feeding,

watering, housing or otherwise caring for a dog can be evidence of "keeper" status. Id.

The state provided sufficient evidence that the defendant was the keeper of the pit bull. Jacqueline Ancona testified that the defendant sheltered the dog in his house and, on occasion, fed the dog and otherwise cared for the dog by providing financial support, such as paying for veterinary bills. There also was evidence that the defendant exercised control over the actions of the dog. The defendant responded to Rutenberg's calls for help and attempted to pull the dog away. Additionally, after Rogers left her business card at the defendant's residence following her first visit when no one was home, the defendant telephoned Rogers and agreed to meet with her to discuss the attack. When, during the meeting, Rogers informed the defendant that she would have to quarantine the dog, the defendant became "irate, very loud [and] vulgar" and stated that Rogers was not taking "his dog." After the defendant calmed down, he signed the quarantine papers and assisted Rogers in loading the dog onto her truck. There was sufficient evidence, therefore, from which the court reasonably could have concluded that the defendant was a keeper of the dog.

The state also provided sufficient evidence that the dog had roamed. Section 22-364 (a) provides in relevant part: "The unauthorized presence of any dog on the land of any person other than the owner or keeper of such dog or on any portion of a public highway when such dog is not attended by or under the control of such owner or keeper, shall be prima facie evidence of a violation of the provisions of this subsection. . . ." There was evidence that on the day in question, the dog ran off the defendant's property and onto Wood Pond Road, a public road. The dog then proceeded to attack Rutenberg and her dog.

For the foregoing reasons, there was sufficient evidence presented to the court that the defendant had violated § 22-364 (a).

The judgment is affirmed.

In this opinion the other judges concurred.