STATE OF CONNECTICUT *v.* BRENT M. ARTHURS
(AC 30516)

Flynn, C. J., and Robinson and Alvord, Js.*

Argued February 8—officially released June 8, 2010

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

*David V. DeRosa*, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Donna Krusinski*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Brent M. Arthurs, appeals from the judgment of conviction, rendered following a trial to the court, of stalking in the first degree in violation of General Statutes § 53a-181c and criminal violation of a protective order in violation of General Statutes § 53a-223.[1] He claims that there was insufficient evidence to support his conviction. We affirm the judgment of the trial court.

The following facts are relevant to the defendant's appeal. The defendant and the victim were married for approximately thirteen months, from October, 2006, until their divorce was finalized in November, 2007. Just before midnight on June 3, 2007, the police were dispatched to the couple's house after a 911 call was placed by the victim. The defendant had been pounding on the side of the house and the front and back doors,

---

[1] The defendant was convicted in the same proceeding of three additional counts of criminal violation of a protective order in violation of § 53a-223, disorderly conduct in violation of General Statutes § 53a-182 (a) (1), criminal trespass in the first degree in violation of General Statutes § 53a-107 and interfering with an officer in violation of General Statutes § 53a-167 (a). These convictions are not at issue in this appeal.

yelling and threatening to break things in an attempt to gain access to the house. Although the victim was afraid to let the defendant inside, she eventually did so. Once inside, the defendant continued to yell and threaten to break things, and the victim locked herself in a bedroom. The defendant broke down the bedroom door and forced his way into the bedroom. The victim called 911. When police arrived on the scene, she was nervous and shaken. The defendant was arrested, and, as a result of the incident, a protective order was issued on June 4, 2007. A total of four protective orders naming the victim as the protected person were issued against the defendant.[2] The order issued on June 4, 2007, provides in relevant part: "Defendant shall refrain from threatening, harassing, stalking, assaulting, molesting, sexually assaulting or attacking the Protected Person. . . . Defendant shall refrain from having any contact in any manner with the Protected Person. Defendant shall refrain from coming within 100 yards of the Protected Person. . . ."

On July 8, 2007, the victim volunteered at a triathlon in Norwalk in which she had previously participated. The defendant, who knew the victim usually participated in the triathlon, also was present at the event. One of the victim's friends, Dan Kurzatkowski, testified that he saw the defendant at the triathlon. The defendant told Kurzatkowski that he had the victim's bicycle wheels and wanted to return them to her. The defendant asked Kurzatkowski if he had seen the victim, and Kurzatkowski replied no.

During the event, the victim kept hearing someone call her name, but she could not identify who it was. A short time later, she saw the defendant standing fifteen to twenty yards away from her in the crowd. The

---

[2] Subsequent protective orders were issued on August 6 and 29, and November 8, 2007.

victim panicked and started to shake. She felt unsafe and wanted to escape. She immediately left the scene, walking backward to her car to make sure she was not being followed. Still afraid and shaking, the victim drove to Black Rock Congregational Church in Fairfield where she hoped to see some of her friends. The victim was not a member of the church but had previously attended it with friends and, on four or five occasions, with the defendant for marriage counseling sessions.

The victim was afraid of parking in the church's main parking lot. Instead, she parked in a remote lot and took a church shuttle to the building. When the victim reached the church's entrance, she saw the defendant ten yards away, hiding against a wall, staring at her. The victim panicked and entered the church. The defendant also entered the building and proceeded upstairs.[3] The victim left the church a few minutes later and called the police. The defendant's conviction of stalking at issue in this appeal arises from the incidents on July 8, 2007, at the triathlon in Norwalk and at Black Rock Congregational Church in Fairfield. The defendant's conviction of criminal violation of a protective order at issue in this appeal arises from the incident at Black Rock Congregational Church in Fairfield on July 8, 2007.

## I

The defendant first claims that there was insufficient evidence to support his conviction of stalking in the first degree in violation of § 53a-181c.[4] "The standard

---

[3] The defendant told police that when he first saw the victim at the church he was on a sidewalk area outside the church and that upon seeing the victim, he hid in some bushes, then went inside after the victim and went upstairs.

[4] General Statutes § 53a-181c provides in relevant part: "A person is guilty of stalking in the first degree when he commits stalking in the second degree as provided in section 53a-181d and . . . such conduct violates a court order in effect at the time of the offense . . . ."

General Statutes § 53a-181d (a) provides in relevant part: "A person is guilty of stalking in the second degree when, with intent to cause another person to fear for his physical safety, he wilfully and repeatedly follows or lies in wait for such other person and causes such other person to reasonably fear for his physical safety."

of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ancona*, 120 Conn. App. 324, 328, 991 A.2d 663 (2010). "In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Russell*, 101 Conn. App. 298, 309–10, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

In order to obtain a conviction under General Statutes § 53a-181d,[5] the state must prove all of the following elements beyond a reasonable doubt: (1) that the perpetrator acted with intent to cause another person to fear for his or her physical safety, (2) that the perpetrator acted wilfully, (3) that the perpetrator acted repeatedly, (4) that the perpetrator followed or lay in wait for the other person and (5) that the perpetrator caused the other person reasonably to fear for his or her physical

[5] The additional requirement imposed by § 53a-181c, that the defendant's conduct constitute a violation of a court order in effect at the time of the offense, is not in dispute with respect to the incident at the triathlon and is disposed of in part II of this opinion with respect to the incident at the church.

safety. See *State* v. *Cummings*, 46 Conn. App. 661, 669, 701 A.2d 663, cert. denied, 243 Conn. 940, 702 A.2d 645 (1997). The defendant argues that there was insufficient evidence to prove that (1) he intended to cause the victim to fear for her physical safety, (2) he followed or lay in wait for the victim and (3) the victim's fear for her physical safety was reasonable under the circumstances.[6] We disagree.

## A

The defendant first asserts that the state failed to adduce sufficient evidence that he intended to cause the victim to fear for her physical safety because no evidence was presented of any direct physical contact, threats or harassment. "[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Intent may be and usually is inferred from conduct . . . . [W]hether such an inference should be drawn is properly a question for the [trier of fact] to decide. . . .

"Proof of verbal threats or harassing gestures is not essential to prove a violation of § 53a-181d. The stalking statute was enacted to address the situation where the criminal does not physically take an act against the person or does not verbally make a direct an[d] immediate threat of harm, but merely stalks the victim. . . . The statute can be violated without a defendant's uttering a syllable, writing a word, or making a gesture." (Citations omitted; internal quotation marks omitted.)

---

[6] The defendant also asks us to overrule the definition of "repeatedly" that this court adopted in *State* v. *Jackson*, 56 Conn. App. 264, 273, 742 A.2d 812 ("repeatedly in the context of the statute means precisely what the commonly approved usage of the word suggests—acting on more than one occasion" [internal quotation marks omitted]), cert. denied, 252 Conn. 938, 747 A.2d 4 (2000), and *State* v. *Russell*, supra, 101 Conn. App. 318 (repeatedly means acting on more than one occasion). We decline to do so.

*State* v. *Marsala*, 44 Conn. App. 84, 94–95, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997); see also *State* v. *Culmo*, 43 Conn. Sup. 46, 52, 642 A.2d 90 (1993), adopted by *State* v. *Marsala*, supra, 97. The evidence adduced at trial, including the victim's account of the domestic dispute that took place on June 3, 2007, the defendant's disregard of the protective order issued against him and the defendant's "creepy" behavior at the triathlon and Black Rock Congregational Church, was sufficient for the court to conclude that the defendant intended to cause the victim to fear for her physical safety on July 8, 2007.

B

The defendant additionally argues that there was insufficient evidence that he followed or lay in wait for the victim. We do not agree. The court reasonably could have inferred from the evidence presented at trial that the defendant knew the victim would be participating in the triathlon, went there specifically to see her and waited in the crowd until he did. Further, the court could have inferred that the defendant followed the victim to the church, arriving first because the victim parked in the remote lot, lay waiting for her by the church's entrance, hid when she approached and stared at her from the nearby sidewalk and bushes.

C

The defendant also maintains that there was insufficient evidence that the victim's fear was reasonable because he never physically assaulted or injured the victim. The defendant's claim is both distressing in its suggestion that physical violence is a precondition of reasonable fear; see *State* v. *Culmo*, supra, 43 Conn. Sup. 51–52 (discussing legislative history of stalking statutes, §§ 53a-181c and 53a-181d); and meritless. "The standard to be applied in determining the reasonableness of the victim's fear in the context of the crime of

stalking is a subjective-objective one. . . . As to the subjective test, the situation and the facts must be evaluated from the perspective of the victim, i.e., did she in fact fear for her physical safety? . . . If so, that fear must be objectively reasonable, i.e., a reasonable person under the existing circumstances would fear for his or her physical safety." (Citations omitted; internal quotation marks omitted.) *State* v. *Russell*, supra, 101 Conn. App. 319. The victim repeatedly testified that she felt afraid, shaken and unsafe. Moreover, the evidence introduced through the testimony of the victim and the responding police officer regarding the incident that occurred at the couple's house on June 3, 2007, was sufficient for the court to conclude that the victim's fear on July 8, 2007, was objectively reasonable. During the June 3, 2007 incident, the defendant yelled, pounded on the front and back doors, threatened to break things and ultimately broke down the bedroom door and forced his way into the bedroom where the victim was hiding. In the process, he broke not only the bedroom door but also a mirror attached to the door and punctured holes in the wall.

## II

In his second claim, the defendant challenges the sufficiency of the evidence underlying his conviction of criminal violation of a protective order. "A person is guilty of criminal violation of a protective order when an order . . . has been issued against such person, and such person violates such order." General Statutes § 53a-223 (a). The defendant does not contest the existence of a valid protective order. Instead, he argues that his presence at the church was accidental, and, as a result, the state failed to prove he possessed the requisite mens rea. See *State* v. *Charles*, 78 Conn. App. 125, 128, 131, 826 A.2d 1172 (criminal responsibility for violation of protective order requires general intent), cert. denied, 266 Conn. 908, 832 A.2d 73 (2003). Although

evidence was introduced through a police officer that the defendant had been going to Black Rock Congregational Church since October, 2006, and claimed to be a member, the court was free to reject this evidence and the chance encounter theory put forward by the defendant.[7] See *State* v. *Russell*, supra, 101 Conn. App. 320 n.23 ("[e]vidence is not insufficient merely because it is conflicting or inconsistent" [internal quotation marks omitted]). Consequently, we conclude that the evidence presented was sufficient to support the court's determination that the defendant violated the June 4, 2007 protective order.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] We note that the defendant did not retreat or leave the church when he noticed that the victim was also there.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.