# STATE OF CONNECTICUT *v.* JEFFREY SAMMS*
## (AC 33068)

Alvord, Bear and Flynn, Js.

Argued October 17—officially released December 11, 2012

* The trial court's judgment and the defendant's appeal form refer to the defendant as "Jeff Samms." We, however, refer to him by his full name, as is listed on the amended information.

*Arnold V. Amore*, special public defender, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Marc G. Ramia*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Jeffrey Samms, appeals from the judgment of conviction, rendered after a jury trial, of one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1)[1] and two counts of stalking in the second degree in violation of General Statutes § 53a-181d (a).[2] On appeal, the defendant

---

[1] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

[2] General Statutes § 53a-181d provides: "(a) A person is guilty of stalking in the second degree when, with intent to cause another person to fear for his physical safety, he wilfully and repeatedly follows or lies in wait for such other person and causes such other person to reasonably fear for his physical safety.

"(b) Stalking in the second degree is a class A misdemeanor."

claims that (1) the court improperly instructed the jury, in violation of *State* v. *Romero*, 269 Conn. 481, 849 A.2d 760 (2004), that "likely," as used in § 53-21 (a) (1), meant "in all probability" and (2) there was insufficient evidence to sustain the jury's guilty verdict on both counts of stalking in the second degree. We conclude that the court's jury instruction on the charge of risk of injury to a child properly followed *Romero*'s holding and the evidence sufficed to permit a guilty finding on both stalking counts. Accordingly, we affirm the judgment of the trial court.

This appeal arises from the defendant's conviction for risk of injury to a child, S.R., and stalking the same child and her mother, S.O., at Hammonasset Beach State Park (Hammonasset) between June and August, 2008.[3] In regard to those actions, the jury reasonably could have found the following facts.

S.O. frequented Hammonasset during the months of June, July and August, 2008, usually two or three days a week. S.R. and her older sister sometimes accompanied S.O. to the beach during this time period. S.O. enjoyed going to Hammonasset because it was very close to her home and provided her with relaxation and peace of mind. When she went to Hammonasset, with or without S.R., she occupied approximately the same spot on east beach because it was secluded and quiet.[4]

S.O. met the defendant at Hammonasset in 2004, when he approached her. She thought that the defendant was "looking for a friend." From then on, she considered him merely an acquaintance. She saw the

---

[3] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[4] There are several different beaches within Hammonasset, including west beach, middle beach, east beach and Meigs Point. West beach is the largest and most popular beach.

defendant at the beach during the summers of 2004, 2005 and 2008. S.O. never had a physical or sexual relationship with the defendant. She never initiated contact with the defendant, nor invited any conversation with him nor did she talk or interact with him outside of east beach.

The first day S.O. saw the defendant at Hammonasset in the summer of 2008, the defendant did not initiate conversation with or approach her. The second time S.O. saw the defendant, she was lying on her blanket in the sand when he walked by and waved from approximately twenty feet away. After those two incidents, the defendant generally would walk along the part of the beach furthest from the water, but then would walk toward S.O.'s blanket, which was closer to the water, when he saw her. Each time, he would change his direction of walking in order to approach S.O. and S.R. The defendant would then walk within a few feet or inches of the blanket. He walked near the heads of S.O. and S.R., kicked sand, kicked their belongings, made hand motions, turned around quickly and glared at S.O. and S.R.[5] When the defendant would turn around and glare, he would maintain visual contact by walking backward for approximately one minute. S.O. never wanted to see or interact with the defendant when she went to Hammonasset.

In one specific instance, while S.O. was in the water and S.R. was on S.O.'s blanket with S.R.'s boyfriend, S.R. spotted the defendant walking fast. When the defendant first saw S.R., he slowed down. The defendant then changed his original walking path trajectory in order to approach S.R. on the blanket. The defendant walked right above S.R.'s head and glared at S.O., who remained in the water, as he passed. When S.R. looked at the

---

[5] The defendant stopped wearing sunglasses so that the victims could see his eyes in an attempt to maintain visual contact.

defendant, he stared back and continued to maintain visual contact for at least one minute as he walked backward.

In a very similar instance, S.O. was again in the water while S.R. was lying on S.O.'s blanket, when S.R. spotted the defendant running toward both of them. S.R. told S.O. that the defendant was coming down the beach and S.R. panicked because S.O. was not with her. S.O. told S.R. to relax. The defendant stopped running and began to walk. He walked slower and walked by S.R. The defendant then approached S.R. from the opposite direction and passed her again.

Later that day when S.R. was in the water and S.O. was on the blanket, the defendant again was walking on a path at the top of the beach. The defendant spotted S.O. from fifteen feet away, turned and walked toward her, approaching within a couple of feet. He stared at S.R. in the water and then went back to the path on the top of the beach.

S.R. recounted another encounter where she was lying on a blanket with her older sister and S.O. Again, the defendant was walking at the top of the beach when he saw the three females and proceeded to walk toward them. The defendant stared at S.R. as he walked down and approached them. He came within three feet of the three females and then kicked S.R.'s shoes before walking back toward the top of the beach.

In another specific incident, S.O. and S.R. were inside of S.O.'s parked car preparing to leave Hammonasset. The defendant emerged from a path, originating on the beach, began to cross over the path diagonally and approached the side of S.O.'s car where S.R. was sitting. The defendant was looking at S.R. and he looked angry. S.R. said, "Oh, my God, oh, my God, mom, he's coming," and S.O. locked the car doors and closed the windows. When the defendant was within a few feet of the car,

he raised his middle finger to the occupants, turned on one foot and walked away.

In August, 2008, S.O. reported these incidents to the department of environmental protection police at Hammonasset. She and S.R. subsequently met with Officer Karen Reilly in the fall of 2008, and they both provided Reilly with statements. Reilly reviewed the statements and, upon belief that there was enough probable cause for a stalking charge, consulted the state's attorney's office and, under its advisement, obtained a warrant for the arrest of the defendant on the charges of which he was ultimately convicted. This appeal followed.

I

We first turn to the defendant's claim that the court improperly instructed the jury, in violation of *State* v. *Romero*, supra, 269 Conn. 481, that "likely," as used in § 53-21 (a) (1), meant "in all probability." We disagree.

We begin by setting forth the standard of review. "A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Internal quotation marks omitted.) *State* v. *Singleton*, 292 Conn. 734, 746, 974 A.2d 679 (2009). We examine the trial court's entire charge when reviewing claims of error concerning it. *State* v. *Devalda*, 306 Conn. 494, 505–506, 50 A.3d 882 (2012).

Our law criminalizes conduct that is likely to impair a child's health or morals. See General Statutes § 53-21 (a) (1). The defendant claims on appeal that the court, when addressing the charge of risk of injury to a child, refused to follow our Supreme Court's holding in *State* v. *Romero*, supra, 269 Conn. 481, when it instructed the jury that the term "likely" as used in § 53-21 (a) (1) meant "in all probability." The trial court went on to charge the jury that the state was obligated to show that "it was probable" that the defendant's

conduct would injure the health or impair the morals of the child. We conclude that there is no merit to the defendant's claim.

In *Romero*, our Supreme Court dealt with an appellate claim that the trial court improperly used the term "possible" in defining the risk to a child that the law prohibits. *State* v. *Romero*, supra, 269 Conn. 485–86. The court in *Romero* rejected that claim because, despite the improper use of "possible" when defining the term "likely," on multiple other occasions the court properly used the terms "probable" or "in all probability" in other portions of its charge. Id., 490–92. Accordingly, our Supreme Court concluded that it was not reasonably possible that the jury was misled. Id., 494. When this holding was brought to the attention of the defendant's counsel at oral argument of this appeal, he conceded that the defining terms used by the trial court in this case sufficed under the *Romero* holding. Because the very terms used by the court to define "likely" were approved by our Supreme Court in *Romero*, we reject the defendant's claim that the court's charge was improper.

We next address the defendant's claim that the court's instruction to the jury somehow diluted the state's burden of proof. Section 53-21 (a) (1) does not require proof of actual injury to the health or morals of a child, but prohibits conduct which is likely to do so. See *State* v. *Padua*, 273 Conn. 138, 148, 869 A.2d 192 (2005) ("Under the 'situation' portion of § 53-21 [a] [1], the state need not prove actual injury to the child. Instead, it must prove that the defendant wilfully created a situation that posed a risk to the child's health or morals."). The defendant also claims that he was prejudiced by the court's definition of "likely" in its charge, in that it may have confused the jury by permitting a conviction for this crime without finding proof of all of the essential elements beyond a reasonable doubt. In light of the

defendant's concession concerning *Romero*, this claim does not require further extensive analysis. In appellate review, we consider the charge as a whole. See *State v. Devalda*, supra, 306 Conn. 505–506. The court properly and repeatedly charged that the likely injury to the child had to be proved beyond a reasonable doubt. We therefore reject this claim.

## II

The defendant claims that there was insufficient evidence to sustain the jury's guilty verdict on both counts of stalking in the second degree.[6] We disagree.

The standard of review for a claim involving the sufficiency of the evidence employs a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State v. Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

---

[6] At the close of the state's case-in-chief, the defendant moved for a judgment of acquittal as to all three counts on the basis of insufficiency of the evidence. The court denied that motion.

the crime beyond a reasonable doubt." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

"If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006).

"In order to obtain a conviction under . . . § 53a-181d, the state must prove all of the following elements beyond a reasonable doubt: (1) that the perpetrator acted with intent to cause another person to fear for his or her physical safety, (2) that the perpetrator acted wilfully, (3) that the perpetrator acted repeatedly, (4) that the perpetrator followed or lay in wait for the other person and (5) that the perpetrator caused the other person reasonably to fear for his or her physical safety."

*State* v. *Arthurs*, 121 Conn. App. 520, 524–25, 997 A.2d 568 (2010). On appeal, the defendant attacks the sufficiency of the evidence only as to the fourth element, namely, whether he followed or lay in wait for the victims.

We have stated that " 'Webster's Ninth New Collegiate Dictionary defines "follow" to mean "to go, proceed, or to come after" and "pursue in an effort to overtake." As used in § 53a-181d . . . which requires that any "following" be "wilful" and "repeated," the "following" must have a predatory thrust to it. The statute does not encompass "following" that is aimless, unintentional, accidental or undertaken for a lawful purpose.' " *State* v. *Jackson*, 56 Conn. App. 264, 272, 742 A.2d 812, cert. denied, 252 Conn. 938, 747 A.2d 4 (2000).

"Of course, following implies proximity in space as well as time. Whether someone has deliberately maintained sufficient visual or physical proximity with another person, uninterrupted, over a substantial enough period of time to constitute following will depend on a variety of differing factors in each case. These are appropriate issues for the trier of fact to decide . . . ." (Internal quotation marks omitted.) *State* v. *Marsala*, 44 Conn. App. 84, 98, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997).

There was evidence presented from which the jury reasonably could have found that the defendant followed the victims between June and August, 2008. Both victims testified that the defendant would maintain visual contact with them, glare and stare. They both also testified that the defendant would walk backward after approaching them so as to maintain visual contact for at least one minute. Furthermore, both victims testified that, although the defendant previously wore sunglasses when on the beach, in 2008, he stopped wearing

them so that the victims could see his eyes, so as to maintain visual contact. From this testimony, the jury reasonably could have determined that the defendant maintained sufficient visual proximity to the victims. See *State* v. *Russell*, 101 Conn. App. 298, 316–17, 922 A.2d 191 (victim's testimony that she saw defendant evinced visual proximity), cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

Furthermore, the victims' testimony placed the defendant at various proximate distances from them, including twenty feet, fifteen feet, three feet, a few feet and inches. The victims testified that the defendant would intentionally change his walking trajectory in order to approach them, therefore moving his physical proximity closer to them. Thus, there was evidence from which the jury reasonably could have determined sufficient physical proximity. Compare *State* v. *Boscarino*, 86 Conn. App. 447, 455–56, 861 A.2d 579 (2004) (presence of defendant's resume in job fair collection pile was insufficient as only evidence to prove defendant maintained sufficient physical proximity to victim to constitute following) with *State* v. *Arthurs*, supra, 121 Conn. App. 522–23, 526 (sufficient physical proximity when victim saw defendant standing fifteen to twenty yards away from her in crowd and ten yards away from her in church parking lot).

Finally, from the evidentiary record, the jury reasonably could have determined that, under the circumstances, the durations during which the defendant was present in both visual and physical proximity to the victims were substantial enough in time to constitute following. S.R. testified that the defendant intentionally slowed his gait and then walked even slower as he approached her. S.O.'s testimony demonstrates that when she was the subject of the defendant's focus, during the defendant's approach and backward retreats, this focus lasted for a substantial amount of time. See

*State* v. *Russell,* supra, 101 Conn. App. 317 ("the ten minutes that the defendant was present at the victim's campsite was a substantial enough period of time to constitute following"); *State* v. *Jackson,* supra, 56 Conn. App. 273 (three brief encounters where defendant stared at victim while in physical proximity satisfied following); *State* v. *Cummings,* 46 Conn. App. 661, 665, 680–81, 701 A.2d 663 (female victim was at bar where defendant also present, when defendant "followed her around the bar, waving and staring at her," and for next two days, drove into park, where victim was present, turned around and drove out), cert. denied, 243 Conn. 940, 702 A.2d 645 (1997). In the present case, the evidence reasonably supports the inference that the defendant maintained visual and physical proximity to the victims over a substantial enough period of time such that the jury reasonably could have found that the defendant followed them pursuant to § 53a-181d (a).[7]

The defendant also argues that there was insufficient evidence to prove that he lay in wait for the victims, as required under § 53a-181d (a). Because of our conclusion that the evidence was sufficient to satisfy the requirement of "following" under § 53a-181d (a), we do not reach this issue. Our Supreme Court has held that, "where the state charges that a defendant has committed a crime in more than one way, and those ways are charged in the conjunctive, as they must be, and the trial court instructs, as it must, that the state need only prove one of its allegations, and not all, the verdict must be upheld so long as there is sufficient evidence under any of the allegations." *State* v. *Chapman,* 229

---

[7] The defendant also argues that he could not have followed the victims because they "voluntarily traveled to a public beach where they knew the defendant would be walking." We previously have found sufficient evidence of "following," in satisfaction of General Statutes § 53a-181e (a), stalking in the third degree, in a public place that both the defendant and victim previously frequented. See *State* v. *Russell,* supra, 101 Conn. App. 310–17 (campground at Housatonic Meadows State Park).

Conn. 529, 543, 643 A.2d 1213 (1994). The amended information charged that the defendant "wilfully and repeatedly followed and lay in wait." The trial court then instructed the jury in the disjunctive that this element would be satisfied if "the defendant followed or lay in wait for" the victims. Because the trial court instructed that the state need only prove that the defendant followed *or* lay in wait, the verdict must be upheld because there is sufficient evidence to support the allegation of following with respect to both victims.

The trial court properly followed *Romero* in its jury charge on risk of injury to a child and the evidence presented is sufficient to permit a guilty finding on both stalking counts.

The judgment is affirmed.

In this opinion the other judges concurred.