******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROBERT S.*
(AC 38667)

Alvord, Prescott and Pellegrino, Js.

*Syllabus*

Convicted of the crime of criminal violation of a protective order arising out of a telephone call made from the defendant's cell phone to the home in which the victim, his former wife, was residing, the defendant appealed to this court. *Held*:

1. The evidence was sufficient to support the defendant's conviction of criminal violation of a protective order; although the defendant claimed that the jury could not reasonably have found that he had the requisite intent to engage in conduct that violated the condition in the protective order that prohibited him from contacting the victim, there was sufficient evidence before the jury from which it could have concluded that the defendant intended to, and did, call the home in which the victim resided in violation of the protective order, as both the victim and a police officer testified that that the phone number that appeared on the home's caller ID belonged to the defendant, and the jury was free to infer that the defendant had made the call, there having been no evidence before the jury from which it reasonably could have inferred that someone other than the defendant had access to his cell phone, nor any evidence to support a conclusion that the defendant had inadvertently dialed the home from his cell phone.

2. The defendant could not prevail, pursuant to *State* v. *Golding* (213 Conn. 233), on his unpreserved claim that the trial court denied him due process at sentencing by relying on unreliable information and denying him an opportunity to present mitigating evidence, as he failed to establish that a constitutional violation existed; it was clear from the record that the trial court, in determining the defendant's sentence, did not substantially rely on certain statements by the victim that the defendant maintained were materially untrue or unreliable, as the record demonstrated that the court, in determining the proper sentence, did not refer directly to the challenged evidence and had sufficient reliable information before it, including the defendant's statements to the court, its own assessment of the defendant's behavior, and information contained in a presentence investigation report, and it was within the trial court's discretion to prevent the defendant from presenting certain evidence that it determined was not relevant to the sentencing proceeding.

Argued November 14, 2017—officially released February 27, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of harassment in the second degree and criminal violation of a protective order, brought to the Superior Court in the judicial district of Hartford, geographical area number fourteen, and tried to the jury before the court, *Suarez, J.*; verdict and judgment of guilty of criminal violation of a protective order, from which the defendant appealed to this court. *Affirmed.*

*James P. Sexton*, assigned counsel, with whom were *Megan Wade*, assigned counsel, and, on the brief, *Cameron Dorman*, assigned counsel, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *Gail P. Hardy*, state's attorney, and, on the brief, *Kathleen Dwyer*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Robert S., appeals from the judgment of conviction, rendered after a jury trial, of one count of criminal violation of a protective order in violation of General Statutes § 53a-223.[1] On appeal, the defendant claims that (1) there was insufficient evidence presented at trial to support his conviction, and (2) the trial court denied him due process by using, and denying him the opportunity to contest, unreliable information during sentencing. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The defendant and the victim were married in 2006 and divorced in 2013. The couple has two minor children, ages four and five at the time of trial, both of whom live with the victim. On October 22, 2014,[2] the court, *Murphy, J.*, issued a protective order against the defendant, naming the victim as the protected person.[3] The order provided in relevant part: "Do not contact the protected person in any manner, including by written, electronic or telephone contact, and do not contact the protected person's home, workplace or others with whom contact would be likely to cause annoyance or alarm to the protected person." Under "Additional Orders of Protection," the order provided: "Any access to the minor child must be arranged and facilitated through a third party relative,"[4] and "[t]he [d]efendant is allowed to have contact with the protected person only through Our Family Wizard software."[5]

In 2015, the victim and the children were living at the maternal grandmother's home in Bloomfield. That house had a landline telephone (landline). On January 5, 2015, a phone call was placed from the defendant's cell phone to the landline. The victim recognized the defendant's cell phone number on the landline's caller ID. The victim did not answer the phone call. The victim felt anxious when she received this phone call. She checked on the children, checked the doors and locks, and then called the police.

Officer Adrian J. Loignon of the Bloomfield Police Department responded to the residence. Officer Loignon spoke to the victim, who showed him the landline's caller ID. Officer Loignon recorded the phone number from the caller ID, and when he returned to the police department, called the phone number four times. No one answered his calls, and the voicemail box was full. Officer Loignon reviewed the police department's in-house records and learned that the phone number recorded from the caller ID was listed as the defendant's phone number. He also reviewed the in-house records and confirmed that there was a protective order prohibiting the defendant from contacting the victim. On the basis of this information, Officer Loignon applied for

an arrest warrant for the defendant.

After trial, the jury convicted the defendant of criminal violation of a protective order.[6] The court, *Suarez, J.*, sentenced the defendant to a term of incarceration of five years, execution suspended after three years, followed by five years of probation. This appeal followed.

## I

The defendant first claims that the evidence at trial was insufficient to support his conviction of criminal violation of a protective order. The defendant does not challenge that he was subject to a valid protective order,[7] or that a call was made from his cell phone to the landline at the home where the victim was living. Rather, the defendant argues that the jury reasonably could not have found beyond a reasonable doubt that he had the requisite intent to engage in conduct that violated the protective order's condition that prohibited him from contacting the victim because there was insufficient evidence that (1) the defendant made the phone call to the landline, or (2) if he did in fact make the call to the landline, he did so intentionally. We disagree.

We begin with the applicable standard of review and principles of law that guide our analysis. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [i]n [our]

process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . Indeed, direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . [A]ny such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 79–81, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

A conviction of criminal violation of a protective order requires proof beyond a reasonable doubt that "an order . . . has been issued against such person, and such person violates such order."[8] General Statutes § 53a-223 (a). Regarding intent, "the violation of a protective order statute is not a specific intent crime. All that is necessary is a general intent[9] that the defendant intended to perform the activities that constituted the violation." (Footnote in original.) *State* v. *Larsen*, 117 Conn. App. 202, 208, 978 A.2d 544, cert. denied, 294 Conn. 919, 984 A.2d 68 (2009).

On the basis of our review of the record, we conclude that there was sufficient evidence before the jury from which it could conclude that the defendant both intended to, and did, call the landline in violation of the protective order. The jury heard evidence that the defendant and the victim were married, that they shared two children, and that the couple subsequently divorced. A copy of the protective order was entered into evidence, along with a transcript of the hearing at which the order was issued. The protective order prohibited the defendant from "contact[ing], including by . . . telephone contact . . . the protected person's home . . . ." The jury heard evidence that, on January 5, 2015, a call was placed from the defendant's cell phone to the landline at the grandmother's house, where the victim and children were living. The victim testified that she recognized the phone number on the caller ID as belonging to the defendant, that this made her anxious, and that she did what she "usually" does when "calls come in at odd times" and checked on the kids, the doors, and the locks before calling the police. We conclude that this evidence provided a sufficient basis for the jury's conclusion that the defendant called the landline, thereby contacting the protected person's home, in violation of the protective order.

As to the defendant's argument that the state did not

prove that he, rather than someone else, made the call on January 5, we conclude that the jury was free to infer that the defendant made the call. The defendant testified that he did not remember making the call. The victim testified, however, that she recognized the phone number on the caller ID as belonging to the defendant. See, e.g., *State* v. *Cummings*, 46 Conn. App. 661, 682, 701 A.2d 663 (sufficient evidence that defendant drove by victim's house because jury could draw reasonable inferences from testimony of victim that she identified defendant's truck, which was known to her, driving past her apartment), cert. denied, 243 Conn. 940, 702 A.2d 645 (1997).

Officer Loignon testified that he confirmed with in-house records that the phone number on the caller ID was listed as belonging to the defendant. There was no evidence before the jury from which it reasonably could have inferred that someone other than the defendant had access to his cell phone. The absence of direct evidence that the defendant made the phone call from his cell phone to the landline does not compel a conclusion by this court that there was insufficient evidence from which the jury could have inferred that the defendant placed the phone call. "If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Stanley*, 161 Conn. App. 10, 16, 125 A.3d 1078 (2015), cert. denied, 320 Conn. 918, 131 A.3d 1154 (2016). We conclude that it was reasonable and logical for the jury to infer, in light of the evidence, that the defendant placed the phone call from his cell phone to the landline. Furthermore, there was no evidence that would compel a conclusion by the jury that the defendant inadvertently dialed the landline from his cell phone. In other words, the jury was free to infer, on the basis of this record and its common sense, that if a call is placed from a phone, the call was made intentionally in the absence of credible evidence to the contrary.

On the basis of our review of the record, we conclude that there was sufficient evidence before the jury from which it could conclude that the defendant was guilty of criminal violation of a protective order.[10]

## II

The defendant next claims that the court denied him due process under the federal constitution[11] at sentencing. Specifically, he argues that the court abused its

discretion in (1) relying on "unreliable information" in sentencing the defendant, and (2) denying the defendant the opportunity to present mitigating evidence to contest that information. The defendant concedes that this claim was not properly preserved before the trial court, but nonetheless seeks review pursuant to our Supreme Court's ruling in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015).[12] Here, the record is adequate to review the defendant's claim, and the issue of a denial of due process at sentencing is an issue of constitutional magnitude. See *State* v. *Ruffin*, 144 Conn. App. 387, 395, 71 A.3d 695 (2013), aff'd, 316 Conn. 20, 110 A.3d 1225 (2015). The defendant cannot, however, establish a constitutional violation. Therefore, we conclude that the defendant's due process claim fails under the third prong of *Golding*.

The following additional facts and procedural history are relevant to this claim. On August 31, 2015, the defendant and his counsel appeared before the trial court, *Suarez*, *J.*, for sentencing. Prior to that hearing, a presentence investigation (PSI) was completed, and the PSI report was submitted to the court. The state argued for the maximum sentence, five years incarceration. The state also requested that the court impose a standing criminal protective order.

The victim was present for sentencing. She submitted and read a letter to the court, also requesting that the court impose the maximum sentence. In relevant part, the victim stated that: (1) the defendant "broke into my house that I presently live in," (2) the defendant "kidnap[ped] the kids only to be found by the police states away," and (3) that she was "threatened by bodily harm by [the defendant], despite court protective orders . . . ."

The defendant also submitted a letter to the court. During allocution, the defendant claimed, in relevant part, that: (1) the protective order at issue in the case was "an outdated court order," which had been modified "specific to things like family access and stuff like that"; (2) the family court, in its dissolution order, issued credibility determinations regarding certain claims made by the victim; (3) there was "documentation in opposition" to some of the claims made by the victim; (4) he documented the victim's family members threatening and harassing him, even while he was incarcerated; and (5) he had "supporting documents showing things contrary" to "things that [the victim] alleged in the police report."

The court explained to the defendant that it could not "assess the credibility of what somebody else said at some other hearing," and that it could "only decide what happened in the hearing that [it] presided over." The court further explained: "All I'm here to do right now is to decide how much time, if any, should be given

to you because of that finding of guilty. I recognize the two of you had a long history of custody battles and trials and things of that sort. That's been made very clear, but what I'm saying to you is that it wasn't me who decided the credibility of those people at those separate trials. All I have to do is decide how much time to give you as a result of a jury finding you guilty of this violation."

The court concluded that a period of incarceration was appropriate, and in consideration of the defendant's statements to the court, the victim's statement, and information contained in the PSI report, the court sentenced the defendant to five years incarceration, execution suspended after three years, followed by five years of probation. The court also issued a standing criminal protective order, listing the victim as the protected person, until August, 2065. In articulating the basis for the sentence imposed, the court noted, in relevant part, that it found the defendant to be stubborn, aggressive, manipulative, and controlling. The court also noted that the victim indicated that she was fearful for the safety of herself and her children, and that the defendant's statements to the court and behavior in violating the protective order indicated that "whatever order I issue, you are not particularly going to abide by because you are accusing everybody else of being the wrong people and not accepting any responsibility at all, and I have absolutely no assurance for the safety of this victim and the children."

The defendant requested that the court reduce his sentence, and the court responded: "I understand that you want to have a relationship with your children, but as I said to you just a minute ago, I am deeply troubled by your manipulation particularly when you accused everybody in this courtroom and other courts of preventing you from having a relationship with your children when it's your behavior that has done so. . . .

"[M]ore importantly, because of your statements to this court today and the PSI and the letter that you wrote to this court leads me to believe that you don't care about court orders or that you will do whatever you need to do regardless of anybody's orders, which leads me to believe that in this particular case, the victim's safety is in question."

The court concluded its reasoning: "I continue to be very nervous about the safety of these individuals because of your actions and because of the attitude toward this whole case."

We now set forth the applicable standard of review. Our rules of practice provide, in relevant part: "Before imposing a sentence . . . (1) [t]he judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition, and to explain or controvert

the presentence investigation report . . . or any other document relied upon by the judicial authority in imposing sentence. . . .” Practice Book § 43-10.

“A sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial. . . . It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. . . .

“Nevertheless, [t]he trial court’s discretion . . . is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. . . . As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion.” (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Eric M.*, 271 Conn. 641, 649–50, 858 A.2d 767 (2004). “Nonetheless, the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: (1) that the information was materially false or unreliable; and (2) that the trial court substantially relied on the information in determining the sentence.” *State* v. *Collette*, 199 Conn. 308, 321, 507 A.2d 99 (1986).

We conclude that when the record is read as a whole, it is clear that the court did not substantially rely on the challenged information when it determined the defendant’s sentence. See *State* v. *Anderson*, 212 Conn. 31, 50, 561 A.2d 897 (1989). Again, the court received statements from both the defendant and the victim, heard the defendant’s allocution, reviewed the PSI report, and heard argument from counsel. We therefore reject the defendant’s claim that the court violated his due process rights by considering the victim’s statement to the court and “not [permitting him] to present any evidence in mitigation of the sentence . . . .” Before imposing the sentence, the court noted: (1) that the case stemmed from a “long history” of conflict between the parties, particularly over child care and custody; (2) the evidence from trial that contradicted the defendant’s claim that he called the landline to arrange visitation with the children; (3) information and statements contained in the PSI, including one by a relative referring to him as “stubborn and aggressive,” and one by a friend that indicated that the defendant was “not willing to lose the battle to win the war”; (4) the “contentious” nature of this case; (5) its own assessment of the defendant’s parenting skills, particularly in light of his decision to place the children “in the middle of a custody battle”; (6) evidence that the defendant violated

the protective order; (7) the defendant's statements to the court, particularly accusations against the victim's family members and the courts, which indicated to the court "how manipulating and controlling" the defendant could be; (8) the defendant's failure to accept responsibility for his actions; and (9) its own concerns for the safety of the victim. Even if this court were to assume, arguendo, that the victim's statements to the court contained information that was materially untrue or unreliable, as the defendant contends, we conclude that the defendant has not shown that the court substantially relied on that information. The court did not directly refer to the challenged information, and there was sufficient reliable information on which the court relied in sentencing.

We are similarly unpersuaded by the defendant's argument that "[b]ecause the trial court did not permit the defendant to present any evidence in mitigation of the sentence, the defendant's due process rights were violated." The court did not, as the defendant contends, impose "an absolute bar on any offer of evidence." The court permitted the defendant to submit evidence and to address the court, both during allocution and through counsel. The court declined only to hear evidence that it determined was outside the scope of the sentencing hearing. As we have noted, our rules of practice afford the court discretion in permitting evidence "on any matter relevant" to the disposition. It was within the court's discretion to prevent the defendant from presenting evidence that it determined was not relevant to the sentencing. Because the defendant has failed to establish a constitutional violation, his due process claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interest of the victim of a criminal violation of a protective order, we decline to identify the victim or others through whom the victim's identity may be ascertained.

[1] General Statutes § 53a-223 (a) provides: "A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, subsection (f) of section 53a-28, or section 54-1k or 54-82r has been issued against such person, and such person violates such order."

[2] A prior protective order was issued on August 31, 2014. That order was not admitted into evidence at trial.

[3] At the October 22 hearing, the court noted that the defendant had two criminal files pending, one of which was for custodial interference.

[4] The defendant arranged and facilitated access to the children through the victim's maternal aunt, who did not live in the victim's home.

[5] Our Family Wizard is a communication software used in high conflict divorces. The software allows professionals, such as attorneys or guardians ad litem, to monitor communications between the parents.

[6] The defendant was also charged with and acquitted of harassment in the second degree in violation of General Statutes § 53a-183 (a) (3).

[7] A copy of the operative protective order was entered as a full exhibit at trial.

[8] The defendant testified that he was aware of the protective order and its terms.

[9] "General intent is the term used to define the requisite mens rea for a crime that has no stated mens rea; the term refers to whether a defendant

intended deliberate, conscious or purposeful action, as opposed to causing a prohibited result through accident, mistake, carelessness, or absent-mindedness. . . . *State* v. *Charles*, 78 Conn. App. 125, 131, 826 A.2d 1172, cert. denied, 266 Conn. 908, 832 A.2d 73 (2003)." (Internal quotation marks omitted.) *State* v. *Larsen*, 117 Conn. App. 202, 208 n.4, 978 A.2d 544, cert. denied, 294 Conn. 919, 984 A.2d 68 (2009).

[10] Alternatively, the defendant argues that "even had the defendant called the 'family phone,' it was permissible under the protective orders," because "it was established that the [g]randmother was a third party relative and the 'family phone' was a phone number the defendant could use to contact the [g]randmother." We reject this argument for two reasons.

First, the plain terms of the protective order prohibit the defendant from contacting the victim's home. Second, even if we were to assume arguendo that the protective order stating "[a]ny access to the minor child must be arranged and facilitated through a third party relative" created an exception from the blanket prohibition on calling the victim's home, we conclude that there was sufficient evidence before the jury from which it could reasonably infer that the defendant was not calling for that purpose. Although the defendant testified that he would communicate with the children on the landline, and that he would contact the grandmother to facilitate visitation with the children, the jury heard evidence that contradicted that testimony. Specifically, during the grandmother's testimony, the following exchange occurred:

"[The Prosecutor]: Thank you. You're aware that visitation for your grandchildren is facilitated—has to be facilitated through a third party; correct?

"[The Witness]: Yes.

"[The Prosecutor]: Who is that third party; do you know?

"[The Witness]: Well, it's my sister.

"[The Prosecutor]: Does your sister live with you?

"[The Witness]: No.

"[The Prosecutor]: Why is it not you?

"[The Witness]: I—Robert don't want to have any dealings with me.

"[The Prosecutor]: So there's no reason for him to call your house?

"[The Witness]: No.

"[The Prosecutor]: So if he wanted visitation with the children he should be calling the—your sister's house?

"[The Witness]: Yes.

"[The Prosecutor]: When was the last time that you talked to [the defendant]?

"[The Witness]: Over a year or more."

"In evaluating the evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." (Internal quotation marks omitted.) *State* v. *Arthurs*, 121 Conn. App. 520, 524, 997 A.2d 568 (2010), cert. denied, 310 Conn. 957, 82 A.3d 626 (2013). Furthermore, the jury was free to credit the testimony of one witness and not the other. See *State* v. *Miles*, 132 Conn. App. 550, 563, 32 A.3d 969 (2011) ("[c]onflicting testimony and the credibility of witnesses is a matter left to the province of the jury"), cert. denied, 303 Conn. 934, 36 A.3d 692 (2012).

[11] To the extent that the defendant also asserts a claim in violation of his due process rights under article first, § 8, of the Connecticut constitution, we conclude that he has abandoned this claim by failing to provide an independent analysis of this issue under the state constitution. See *State* v. *Schultz*, 100 Conn. App. 709, 712 n.2, 921 A.2d 595, cert. denied, 282 Conn. 926, 926 A.2d 668 (2007).

[12] Pursuant to *Golding*, a defendant may prevail on a claim of constitutional error not preserved at trial only if all four of the following conditions are satisfied: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding* by eliminating word "clearly" before words "exists" and "deprived").